**TRAP ROCK INDUSTRIES, INC., Appellant,**

v.

**LOCAL 825, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Appellee.**

No. 92–5281.

United States Court of Appeals, Third Circuit.

Argued Nov. 17, 1992.

Decided Dec. 30, 1992.

Jeffrey L. Braff (argued), Cohen, Shapiro, Polisher, Shiekman and Cohen, Philadelphia, PA, for appellant.

David Grossman (argued), Schneider, Cohen, Solomon, Leder & Montalbano, Cranford, NJ, for appellee.

Before MANSMANN, HUTCHINSON and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal presents for our review the question of the effect to be given a clause in a collective bargaining agreement which reserved to the employer's discretion the right to demote and ultimately to discharge an employee who failed to perform assigned duties properly or who failed to meet the qualifications of his job. The district court ruled against the employer and granted the Union's motion to compel arbitration. We reverse.

### I.

Trap Rock Industries, Inc. ("Trap Rock") is engaged in the quarrying industry and was the employer of Freddy Torres, a member of Local 825 of the International Union of Operating Engineers, AFL–CIO ("Union"). The Union is the exclusive bargaining representative for certain of Trap Rock's employees, including, as stated, Freddy Torres.

On June 1, 1990, the Union and Trap Rock entered into a collective bargaining agreement ("CBA") covering the three year period from June 1, 1990 through May 31, 1993. Among its several provisions, the CBA includes two complementary clauses that are pertinent to Trap Rock's appeal. Article III, paragraph 6, the "Reservation Clause," provides:

The Employer reserves the right, which right shall not be subject to Arbitration, to determine the qualifications of any Employee covered hereunder and if, in the Employer's opinion, the Employee does not meet the qualifications or fails to perform his duties properly, then the Employer can Discharge or demote the Employee, whichever the Employer desires. The Employer will notify the Emplolyee [sic] and Union of such action.

The "Arbitration Clause," Article VII, paragraph C, provides for binding arbitration in other particular instances where disputes between Trap Rock and the Union have not been resolved through an internal grievance procedure. This provision expressly limits the arbitrator's jurisdictional reach:

[t]he Arbitrator's powers are limited as follows:

He shall have no power to add to, or subtract from, or modify any of the terms of any Agreement....

He shall have no power to substitute his discretion for the Employer's discretion in cases where the Employer is given the discretion by this Agreement or by any supplementary Agreement, except that where he finds a disciplinary layoff or discharge is in violation of this Agreement, then he may make appropriate modifications of the penalty.

Freddy Torres was employed as a truck driver at Trap Rock's open pit quarry in Pennington, New Jersey. Among his duties, Torres was required to drive a 29–ton, 6–wheel "haul truck" on steep, unpaved dirt roads into the quarry, where the truck was loaded with stone. Torres then drove the laden truck, often weighing in excess of 150,000 pounds, to a "stone crusher," into which the rock was deposited.

Over a period of fourteen months, Torres received several written and verbal warnings from his supervisor regarding his failure to perform his duties properly. Specifically, Torres was warned for excessive absenteeism, (A. 29); for reading a newspaper in his truck at the primary "crusher," (A. 29; 32; 33); for failing to stop his truck at a designated point before downshifting to first gear and for shifting to reverse while moving forward, (A. 30, 33–34); and for sustaining a gash in a truck tire after driving over a large, sharp-edged rock. (A. 34; see A. 30).

On October 26, 1990, Torres was demoted to the job of "laborer." (A. 30). Torres' supervisor determined that Torres' work was "defective," (A. 35); that he failed to perform his truck driving duties properly and failed to meet the qualifications for being a truck driver, (A. 20); and that "for the safety of Fred Torres and the other Employees and the wear and tear on the

trucks he should be demoted to a laborer to keep the man employed." (A. 34).

On October 29, 1990, Torres complained to his supervisor that his new job was unsafe; he also complained about his hourly wage and about his demotion in general. (A. 22–23). On the same day, Torres signed an "Employee Warning Record" drafted by his supervisor which stated, "On Oct. 29, 1990, employee refused to work because of demotion." (A. 31).

According to Torres, and apparently due to his refusal to work, the supervisor told him to "punch out and go home." (A. 23). Torres claims that when he returned the following day, the supervisor did not allow him to return to work, telling Torres that it was not his, the supervisor's, place to hire him back. (A. 23). That same day Torres filed a grievance acknowledging that he was demoted because "[t]hey said I failed to meet the requirements to drive a truck," (A. 17), but alleging that, because other employees had committed similar infractions without being demoted, "Trap Rock is discriminating me [sic] forcing me to quit." (A. 18).

On April 11, 1991, Trap Rock filed a complaint in the District Court for the District of New Jersey seeking a declaratory judgment that the Torres dispute was not subject to arbitration, as well as an order enjoining the Union from submitting the Torres dispute to arbitration. On January 21, 1992, Trap Rock filed a motion for summary judgment and, on the same date, the Union cross-moved to compel arbitration, pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) and the Federal Arbitration Act, 9 U.S.C. § 4. On April 22, 1992, the district court issued a memorandum and order denying Trap Rock's motion for summary judgment and granting the Union's cross-motion to compel arbitration. This appeal followed.

## II.

The district court commenced its analysis of the two motions by restating the well-settled standards governing summary judgment, and by setting forth what it considered to be the law of this circuit governing the arbitrability of disputes. Apparently due to the mere presence in the CBA of the Article VII, paragraph C "Arbitration Clause," the district court invoked, without discussion or analysis, the "presumption of arbitrability" required in certain circumstances under *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986).[1] The district court then employed an analytical framework for applying that presumption as set forth by this court in *E.M. Diagnostic Systems, Inc. v. Local 169, International Brotherhood of Teamsters*, 812 F.2d 91, 95 (3d Cir.1987):

> (1) Does the present dispute come within the scope of the arbitration clause? (2) does any other provision of the contract expressly exclude this kind of dispute from arbitration? and (3) is there any other "forceful evidence" indicating that the parties intended such an exclusion?

*E.M. Diagnostic*, 812 F.2d 91 (3d Cir.1987).

Focusing on the second of these inquiries, the district court concluded that "[t]he dispositive issue in this case is whether, as Trap Rock argues, [Article III, paragraph 6] expressly excludes from arbitration the subject matter of Mr. Torres's grievance." The district court then held that Article III, paragraph 6 "does not exclude from arbitration the subject matter of the Torres dispute." The district court reasoned that Torres was demoted because of his supervisor's "personal animosity" towards him and that the expressed reasons for the demotion—safety infractions, poor performance and a lack of qualifications—were "merely pretext." The court concluded that "this is not a dispute about whether

---

1. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpreta-

tion that covers the asserted dispute. Doubts should be resolved in favor of arbitration.'" *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (citation omitted).

Mr. Torres met the qualifications required for the position" and that, therefore, the dispute did not fall within Article III's exemption from arbitration.

In the alternative, the district court, concluding that the first clause of paragraph 6[2] was severable from the second clause,[3] held that even if the dispute did involve Torres' qualifications, Article III, paragraph 6 did not exclude such disputes from arbitration in the first instance. Thus, according to the district court, only Trap Rock's right to determine an employee's qualifications is non-arbitrable, while the demotion or discharge of an unqualified or poorly performing employee must be submitted to arbitration. Accordingly, the district court held that Torres' dispute, even if arising from a demotion based on qualifications or a failure of performance, must be arbitrated.

### III.

■ We have jurisdiction over the district court's final order compelling arbitration pursuant to 28 U.S.C. § 1291. *See Goodall–Sanford, Inc. v. Textile Workers of America, A.F.L. Local 1802,* 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957); *Zosky v. Boyer,* 856 F.2d 554 (3d Cir.), *cert. denied,* 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 992 (1988). In light of the manner in which the procedure developed in the district court, where a motion for summary judgment was countered with a motion to compel arbitration, the order compelling arbitration is deemed by us to be tantamount to an order granting a cross-motion for summary judgment. When an appeal from a denial of summary judgment is raised, as it is here, in tandem with an appeal of an order granting a cross-motion for summary judgment, as we deem the district court's arbitration order to be, we have jurisdiction to review the propriety of the denial of summary judgment by the district court. *Sacred Heart Medical Center v. Sullivan,* 958 F.2d 537, 543 (3d Cir.1992); *Nazay v. Miller,* 949 F.2d 1323, 1328 (3d Cir.1991); *First National Bank v. Lincoln National Life Insurance Co.,* 824 F.2d 277, 281 (3d Cir.1987). Thus, we simultaneously review both the district court's order compelling arbitration and the order denying Trap Rock's motion for summary judgment. Our standard of review is plenary.

Because we review the district court's order compelling arbitration as a grant of summary judgment, we will apply the same summary judgment test as that applied by a district court. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3rd Cir.), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Thus, pursuant to Fed.R.Civ.P. 56(c), we ask: "(1) is there no genuine issue of material fact and (2) is one party entitled to judgment as a matter of law?" *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3rd Cir.1992) (quoting *Country Floors, Inc. v. Gepner,* 930 F.2d 1056, 1060 (3rd Cir.1991) (quoting *Int'l Union, UMWA v. Racho Trucking Co.,* 897 F.2d 1248, 1252 (3rd Cir.1990))). Moreover, where we review both a denial of a motion for summary judgment and a grant of a cross-motion for summary judgment, and "where, as here, the facts are uncontroverted, we are free to enter an order directing summary judgment in favor of the [party whose motion had been denied by the district court.]" *Sacred Heart,* 958 F.2d at 543; (quoting *Nazay,* 949 F.2d at 1328; *First National Bank,* 824 F.2d at 281).

### A.

■ We begin our discussion with the law governing the arbitrability of labor disputes, as first articulated by the Supreme Court in the *Steelworkers Trilogy*[4] and

---

**2.** "The Employer reserves the right, which right shall not be subject to Arbitration, to determine the qualifications of any employee covered hereunder...."

**3.** "... and if, in the Employer's opinion, the Employee does not meet the qualifications or fails to perform his duties properly, then the employer can Discharge or demote the Employee, whichever the Employer desires."

**4.** *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car*

restated in *AT & T, supra.* First, although federal policy generally favors arbitration of disputes between a union and an employer, the federal courts have made it clear that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.' " *AT & T,* 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)). *See also United Steelworkers v. Lukens Steel Co.,* 969 F.2d 1468, 1473 (3d Cir.1992) (quoting *AT & T* and *Warrior & Gulf*); *Morristown Daily Record v. Graphic Communications Union, Local 8N,* 832 F.2d 31, 33 (3d Cir.1987) (quoting *AT & T; Warrior & Gulf*); *E.M. Diagnostic,* 812 F.2d at 94 (quoting *Warrior & Gulf*). Second, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1418. *See also John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84

S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964); *Lukens Steel,* 969 F.2d at 1473–74 (quoting *AT & T;* citing *John Wiley* ); *Morristown Daily,* 832 F.2d at 33 (citing *AT & T* ); *E.M. Diagnostic,* 812 F.2d at 94–95 (citing *AT & T* ). Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1419. *See also Lukens Steel,* 969 F.2d at 1474 (quoting *AT & T* ); *Morristown Daily,* 832 F.2d at 33 (citing *AT & T; United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)).[5]

### B.

In applying these principles to a particular collective bargaining agreement, the "courts must carefully analyze the contractual language to determine whether a particular dispute is arbitrable." *Morristown Daily,* 832 F.2d at 34–35 (3d Cir. 1987). Here, the pertinent language of Articles III and VII of the CBA clearly re-

Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**5.** The district court's invocation of the "presumption of arbitrability" as set forth in *AT & T, supra,* was inappropriate here. The *AT & T* Court gave us specific guidance on the applicability of that presumption, advising that it "is particularly applicable where the [arbitration] clause is a *broad one,*" covering " '*any differences* arising with respect to the interpretation of this contract or the performance of any obligation hereunder,' " *AT & T, supra,* 475 U.S. at 650, 106 S.Ct. at 1419. (emphasis added), and that in such cases " 'only the most forceful evidence of a purpose to exclude a particular grievance from arbitration can prevail.' " *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419 (citation omitted).

This court has adhered to that guidance, also recognizing that the presumption is to be invoked where an arbitration provision is a "*broad one.*" *E.M. Diagnostic Systems, Inc. v. Local 169, International Brotherhood of Teamsters,* 812 F.2d 91, 95 (3d Cir.1987) (emphasis added). *See also United Steelworkers v. Lukens Steel Co.,* 969 F.2d 1468, 1474 (3d Cir.1992) ("[w]hen, as here, the collective bargaining agreement contains a *broad* grievance and arbitration clause, the presumption of arbitrability applies") (emphasis added). In *E.M. Diagnostic,* for example, the broad arbitration provision

applied to "*[a]ny dispute* arising out a claimed violation of this Agreement [the CBA]," 812 F.2d at 92 (emphasis added), and provided that the "[a]rbitrator's decisions shall be binding and final upon all parties." *Id.* at 93. Unlike the provision before us, the *E.M. Diagnostic* provision did not by its explicit terms expressly limit the range of arbitrable disputes to a single category or function, such as limiting the arbitrator's power to modifying a penalty where only disciplinary layoffs or discharges which violate the terms of the CBA are involved. *Compare also Lukens Steel,* 969 F.2d at 1470 (broad arbitration clause provides for arbitration of *all* disputes arising from suspension and discharge, without limitation); *Morristown Daily Record v. Graphic Communications Union, Local 8N,* 832 F.2d 31, 34 (3d Cir.1987) (provision authorizes arbitration of unresolved grievances over "any dispute" over meaning or violation of CBA, or over discharge, without limitation).

Because the arbitration provision of Article VII is narrowly crafted to apply only to certain disciplinary discharges and layoffs, we cannot presume, as we might if it were drafted broadly, that the parties here agreed to submit all disputes to arbitration, particularly where the employer has expressly reserved to itself the rights found in Article III, paragraph 6. Thus, the presumption of arbitrability and the *E.M. Diagnostic* test, which were central to the district court's analysis, are inapposite.

veals that the parties have agreed that where an employee's qualifications or job performance are at issue, the employer, and not the arbitrator, should have the sole discretion to demote or discharge an employee.

When read together, the "Reservation Clause" of Article III and the "Arbitration Clause" of Article VII disclose the parties' agreement to restrict an arbitrator's powers to the modification of a penalty where only certain disciplinary layoffs or discharges which are in violation of the CBA are arbitrated.[6] They have done so, while at the same expressly providing that there shall be no arbitration of discharges or demotions arising from deficiencies in qualifications or performance.

We thus reject the district court's interpretation of the agreement which, we conclude, unjustifiably misconstrues the structure of Article III. First, the district court's reading disregards the parallel use of a salient term, "qualifications," which appears on both sides of the "equation"—in both the first and second clauses of Article III, paragraph 6. That parallel structure clearly suggests that the provision's introductory pronouncement of non-arbitrability was intended to be overarching, applying both to the determination, and then to the sanction, involving an employee's "qualifications."

More important, the district court's interpretation would deprive the "Reservation Clause" of its logical coherence. First, as a practical matter, Trap Rock's independent judgment that an employee lacks qualifications simply cannot give rise to a dispute with the Union until some further action, such as the demotion or discharge of an unqualified employee, is taken with respect to that judgment. Moreover, as a functional matter, Trap Rock's exclusive authority to determine whether its employees are

qualified, without resort to arbitration, would be rendered entirely toothless if actions taken to effectuate those determinations must be submitted to arbitration. Indeed, nowhere in the CBA does any limitation on the employer's customary prerogative of determining employees' qualifications appear. If this provision is to have any practical significance, it must be construed as vesting in Trap Rock the authority not only to determine whether an employee is qualified, but also the authority to act upon such a determination, free from arbitration, with the same degree of autonomy.

We thus conclude that the correct interpretation of Article III's "Reservation Clause," which is both consistent with its structure and which permits of a practical application, must reflect the parties' express agreement to reserve to Trap Rock, in its discretion and without resort to arbitration, the right to determine whether an employee is qualified, and to demote and ultimately to discharge an employee who is unqualified or who fails to perform assigned duties properly. So construed, the "Reservation Clause" directly complements Article VII's "Arbitration Clause," which represents the parties' express agreement that only disputes over disciplinary layoffs or discharges which violate the terms of the CBA may be submitted to an arbitrator, and then only for the limited purpose of modifying the "penalty."

We have discussed Article VII because, as stated, it complements and gives additional meaning to the "Reservation Clause" of Article III. In its brief and at oral argument, however, the Union at no time addressed Article VII's "Arbitration Clause" or its relationship to Article III's "Reservation Clause."[7] Trap Rock did discuss the "Arbitration Clause" in its brief and at oral argument, but only to the ex-

---

6. Thus, the arbitrator's limited authority is threefold: first, he must determine whether a layoff or discharge was the result of disciplinary action provoked by the employee's conduct; second, he must determine whether the disciplinary layoff or discharge violated the terms of the CBA; and third, if so, he may do no more than modify the "penalty" assessed.

7. At oral argument, counsel for the Union referred to the "arbitration clause" only in response to an inquiry into its applicability to demotions. Counsel answered that the clause did not apply to Trap Rock's decisions to demote.

tent that it prohibits the arbitrator from encroaching upon the employer's vested discretion under the CBA. Neither Trap Rock nor the Union has addressed, as we have here, the relationship of these two clauses, each to the other. Nor did either discuss the limitation on the arbitrator's powers as found in Article VII.

Finally, the district court itself makes reference to the "Arbitration Clause," but only to note that it "would be a nullity if Trap Rock's reading of article three, section 6 were correct." To support this statement, the district court then asked the rhetorical question: "[i]f Trap Rock's discharge of an employee were not subject to arbitration, how could an arbitrator ever find that the discharge violated the terms of the agreement?" That question is readily answered, however. Articles III and VII together identify two types of discharges: (1) discharges based on improper performance or a lack of qualifications, which are not subject to arbitration, under Article III, and (2) disciplinary discharges,[8] which may be submitted to the arbitrator as to whether the employer's penalty should be modified, if the employee's discharge violated the terms of the CBA, under Article VII.

Given the terms of the agreement before us, therefore, Trap Rock may not be compelled by a federal court to arbitrate a demotion or discharge based on a lack of qualifications or poor performance. *See AT & T*, 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1352). *See also Lukens Steel*, 969 F.2d at 1473 (3d Cir.1992) (quoting *AT & T* and *Warrior & Gulf*); *E.M. Diagnostic*, 812 F.2d at 94 (3d Cir.1987) (quoting *Warrior & Gulf*).

---

**8.** The CBA furnishes no content as to what is meant by a "disciplinary" discharge, and the parties have called our attention to no provision of the CBA pertaining thereto, a burden which we believe rests upon the Union in this proceeding. We assume that the agreement must be read as implicitly referring to actions taken by an employee such as drunkenness, ingestion of controlled substances, theft, and the like, none of which are central either to qualifications or performance, and any of which would commonly result in a disciplinary penalty.

## IV.

■ After our independent review of the record, we conclude that there is no genuine issue. The undisputed facts clearly demonstrate that Torres was demoted because he performed his duties improperly and because he lacked the requisite qualifications of a haul truck driver. Because we have concluded that the "Reservation Clause" of Article III precludes arbitration over such demotions or discharges, Trap Rock is entitled to summary judgment as a matter of law.[9] *See Sacred Heart*, 958 F.2d at 543; *Nazay*, 949 F.2d at 1328; *First National*, 824 F.2d at 281; note 1, *supra*.

Summary judgment is required where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although the "burden to demonstrate the absence of material fact issues remains with the moving party regardless of which party would have the burden of persuasion at trial," *Levendos v. Stern Entertainment*, 860 F.2d 1227, 1229 (3rd Cir.1988) (internal quotation marks and citation omitted), the moving party's "burden" under Rule 56(c) "is discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554.

A non-moving party may not "rest upon mere allegations, general denials or . . . vague statements. . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3rd Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991). If the non-moving par-

---

**9.** As discussed in text, above, we read Article III, paragraph 6 as an exclusive right to demote or discharge in the exercise of the employer's discretion. Moreover, at no time has the Union claimed that Torres' alleged discharge invoked the terms of Article VII, even if that article were relevant here. Nor has any colorable claim of any violation of the CBA ever been identified by the Union.

ty's evidence " 'is merely colorable, ... or is not significantly probative, ... summary judgment may be granted.' " *Gray*, 957 F.2d at 1078 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)).

The district court reasoned, and the Union here argues, that Torres was demoted because of his supervisor's personal animosity towards him rather than because of poor performance or a lack of qualifications, and that, therefore, the "Reservation Clause" did not bar arbitration of this dispute. This assertion, however, is not supported by the record. Torres himself concedes that he received numerous verbal and written warnings from his supervisor. (Torres Aff. at A. 22). These warnings, attached as exhibits to an affidavit submitted by Trap Rock, were issued for careless driving, safety infractions and defective work. (Warning Notices, Exh. C to Caropreso Aff. at A. 29–31).

Torres concedes that he slashed a tire by driving over a large, sharp rock, (Torres Aff., at A. 22), and that he was reading a newspaper in his truck at the primary crusher. (Grievance, Exh. A to Torres Aff. at A. 17). The record also establishes that Torres was issued warnings for failing to stop his truck at a designated safety point before downshifting into first gear and putting his truck into reverse, and for driving a truck unsatisfactorily. (Warning Notices, Exh. C to Caropreso Aff. at A. 29–31). Supervisor Bray's affidavit states, among other things,

\* \* \* \* \* \*

3. Freddy Torres ("Torres") was a truck driver for Trap Rock at the Pennington Quarry. His Responsibilities as a truck driver included driving a 29–ton, 6–wheel (each of which is approximately 6 feet high) haul truck into the quarry, waiting for it to be filled with heavy stone, driving the loaded truck (often weighing over 150,000 pounds) to the

stone crusher, and dumping it there. Much of the driving must be done on unpaved dirt roads with relatively steep grades. The very nature of the job places a great premium on safety. [A] driver who does not perform his duties properly exposes not only himself, but all of those around him/her, to serious dangers.

4. On October 26, 1990, after Torres received five written warnings within the prior fourteen months (four of which were within the prior six weeks) for, among other things, disobedience, misconduct, carelessness, safety infractions, and defective work, *I demoted Freddy Torres because, in my opinion, he had failed to perform his truck driving duties properly and he failed to meet the qualifications of being a truck driver. I demoted Torres to the position of laborer.*

(A. 19–20) (emphasis added).

Nowhere in the record does the Union contradict by affidavit or sworn testimony the allegations made by Trap Rock under oath that Torres was unqualified and performed poorly. The Union merely asserts in the text of its brief that the conduct which led to Torres' demotion "had nothing to do with his ability or qualification to drive a truck." Union Brief at 17.

Nor has the union articulated any facts by its affidavits which substantiate its claim that Torres was demoted due to personal animosity. The submitted affidavits contain only Torres' general allegations that "Mr. Bray harassed me and treated me unfairly," (Torres Aff. at A. 22); that "[e]ver since they change the supervisor, they have been treating me unfair," (Grievance, Exh. A to Torres Aff. at A. 17); and that "Trap Rock is discriminating me [sic] forcing me to quit." (Grievance, Exh. A to Torres Aff. at A. 18). Such general allegations, absent any factual foundation, fall short of raising a genuine issue of material fact.[10] *See Quiroga* 934 F.2d at 500.[11]

---

**10.** Torres also alleges that other employees committed infractions similar to his but were neither demoted or discharged, and that this demonstrates that he was treated in a discriminatory fashion. Torres does not, however, deny that he performed his duties improperly; nor does he point to any part of the record which might demonstrate some degree of similarity between the circumstances, severity and frequency of his infractions and those of other employees.

**11.** *See also* Fed.R.Civ.P. 56(e): "When a motion for summary judgment is made and supported

Significantly, in concluding that personal animosity motivated Torres' demotion, the district court relied solely on arguments and allegations raised in the Union's *brief*. However, this court has made it clear that arguments, allegations or "facts" contained in briefs, and that are not evidentiary because they are not sworn to, are insufficient to overcome a motion for summary judgment based on sworn affidavits. *See Thornton v. United States*, 493 F.2d 164, 167 (3d Cir.1974) ("A statement in a brief or in oral argument does not constitute evidence" for purposes of summary judgment). Thus, the allegations raised solely in the Union's brief do not suffice to raise any genuine issue of material fact regarding the reason for Torres' demotion.

Because the undisputed evidence demonstrates that Torres was demoted for failing to perform his duties properly and for failing to meet the qualifications of his job, and because the CBA's "Reservation Clause" expressly grants Trap Rock the sole discretion to demote or discharge an employee for those reasons without resorting to arbitration, Trap Rock is entitled to summary judgment as a matter of law.

## V.

We will reverse the district court's order of April 22, 1992 denying Trap Rock's motion for summary judgment and direct that the district court enter judgment in favor of Trap Rock and against the Union. Accordingly, we will also reverse the district court's order of the same date granting the Union's motion to compel arbitration.

as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."