NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0040n.06
Filed: January 10, 2008

No. 07-5001

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

INTERNATIONAL ASSOCIATION
OF MACHINISTS AND AEROSPACE WORKERS,

     Appellant,

v.

                                     On Appeal from the United
                                     States District Court for the
                                     Western District of Kentucky

ISP CHEMICALS, INC.,

     Appellee.

Before:  MOORE and GRIFFIN, Circuit Judges; GRAHAM, District Judge.[*]

**OPINION**

     **GRAHAM, District Judge.**  This is an appeal from the decision of the United States District

Court for the Western District of Kentucky determining that a grievance filed against ISP Chemicals,

Inc. ("ISP" or the "Company") by the International Association of Machinists and Aerospace

Workers, Lodge No. 1720 (the "Union"), a labor organization representing ISP employees, is not

arbitrable under the terms of the Collective Bargaining Agreement ("CBA") governing the parties'

relationship.  Because the arbitration clause is susceptible of an interpretation in which the Union's

grievance is an arbitrable dispute, we reverse the grant of summary judgment to ISP.

**FACTUAL AND PROCEDURAL BACKGROUND**

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

No. 07-5001
*Int'l. Assoc. of Machinists and
Aerospace Wkrs. v. ISP Chemicals, Inc.*

The Union and ISP are parties to a CBA effective from January 8, 2005 to January 8, 2008. Article X of the CBA sets forth a grievance and arbitration procedure which culminates in arbitration. *See* J.A. at 94-95, ¶¶ 44-53. The CBA broadly defines a grievance as "any difference of opinion or dispute between representatives of the Company and any employee or Union representative regarding interpretation or application of any provision of this Agreement." *Id*. at 94, ¶ 44. After the aggrieved party has pursued the three-step procedure outlined in Article X, the party may seek to resolve its dispute through arbitration. *See id*. at 94-95.

The CBA excepts certain matters from arbitration. Paragraph 52 provides in pertinent part that "[i]t is understood by and between the parties that matters involving general wage levels, existing job classifications (as set forth in this Agreement), and matters not specifically covered by this Agreement shall not be arbitrable." J.A. at 95, ¶ 52. The parties dispute whether the matter at issue in the Union's Grievance #2005-23 – employee contributions toward medical benefits – is arbitrable under the terms of the CBA.

The topic of employee contributions toward medical benefits was negotiated by the parties before they entered into the CBA. J.A. at 39-40. During the CBA negotiations, ISP and the Union agreed upon a rate structure that utilized certain variables to determine the amount employees would pay towards their medical insurance from year to year. *Id*. The particulars of this rate structure for employee contributions, however, were not included in the CBA itself. The only reference to employee contributions in the CBA is in Paragraph 98, which provides in pertinent part:

> Employees are eligible for the following benefits, the terms which are set forth in the GAFLEX Summary Plan Description booklet:
>
> *Medical Benefits*
> Dental Benefits
> Vision Benefits
> Prescription Drug Plan

2

No. 07-5001
*Int'l. Assoc. of Machinists and*
*Aerospace Wkrs. v. ISP Chemicals, Inc.*

> GAFCOMP
> Health Care Account
> Dependant Care Account
> GAF Retiree Medical
>
> *Employee contributions for these coverages are defined in the benefits book.*

J.A. at 105, ¶ 98 (emphasis added). The details of the employee contribution rate structure, in turn, are set forth in the "benefits book" referenced in Paragraph 98 of the CBA. J.A. at 37, 153. The benefits book does not contain an arbitration provision, but does contain a disclaimer that provides:

> This booklet is not a contract or a Summary Plan Description but solely intended to give you a short description of the main provisions of your ISP Employee Benefit Programs. If any conflict should arise between the description in this booklet and the Summary Plan Descriptions, Plan Documents or Trust Agreements, the terms of the Summary Plan Descriptions, Plan Documents or Trust Agreements will, of course, govern in all cases. Copies of these official documents may be inspected upon making a request to the Corporate Human Resources Department (Benefits Department).

J.A. at 38. Despite the reference to various other plan documents, the employee contribution rate structure is not set forth in any of those documents or in any other document, but only in the benefits book. *See* Union Br. at 21.

On August 22, 2005, the Union filed Grievance #2005-23, disputing the amount employees were being required to contribute toward their medical benefits. J.A. at 131. The Union's "Statement of Grievance" was that ISP was not "abiding by [the] negotiated rate structure for employee contributions toward medical benefits . . . ." *Id.* The grievance was pursued through the three-step grievance procedure provided in the CBA and was denied. *Id.* at 133. The Union then requested that the grievance be submitted to arbitration, but ISP ultimately refused, asserting that the subject matter of the grievance was not arbitrable under the terms of the CBA. *See id.* at 137-38.

3

Relying upon the statement contained in Paragraph 52 that "matters not specifically covered by this Agreement shall not be arbitrable," ISP contends that the matter of employee contributions toward medical benefits is not one that is "specifically covered" by the CBA. In response to ISP's refusal to arbitrate, the Union filed the instant action to compel arbitration pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. J.A. at 6-8.

Upon cross motions for summary judgment, the district court granted summary judgment for ISP, reasoning that, despite a presumption of arbitrability, the terms of the CBA were not susceptible of an interpretation in which the rate structure could be considered a "specifically covered" matter. The district court also rejected the Union's alternative argument that Paragraph 98 of the CBA incorporated by reference the terms of the rate structure as set forth in the benefits book. The Union now appeals the district court's decision.

## STANDARD OF REVIEW

This court reviews *de novo* a district court's decision granting summary judgment. *United Steel Workers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). "The standard of review for a district court's decision regarding whether a dispute is arbitrable is also *de novo*." *Simon v. Pfizer Inc.*, 398 F.3d 765, 772 (6th Cir. 2005).

## DISCUSSION

At the outset, the court observes that, contrary to ISP's position, the "scope test" adopted by this circuit in *Cooper Tire* is inapplicable to the instant dispute. *See Cooper Tire*, 474 F.3d at 278-79. In *Cooper Tire*, the court employed the scope test to determine "whether a dispute over a 'side agreement' that [did] not provide for arbitration [came] within [a] CBA's arbitration clause." *Id*. at

278. The dispute at issue here, however, does not involve a side agreement, that is, an agreement reached by the parties separate and apart from the CBA. *See id*. at 274 n.3. As the benefits book clearly provides, and indeed ISP repeatedly reminds this court, the benefits book is not a contract.[1] *See* J.A. at 38; ISP's Br. at 4, 6, 8 n.3.

More importantly, the Union's grievance is that ISP is not adhering to the negotiated rate structure for employee contributions toward medical benefits, *see* J.A. at 131, a matter which, as discussed more fully, *infra*, this court finds is a dispute concerning the interpretation or application of a provision of the CBA, namely Paragraph 98. ISP selectively quotes from the Union's grievance in support of its argument that this dispute is about the benefits book. *See* ISP's Br. at 3. While it is true that the "Settlement Requested" in the grievance record was "for the company to abide by the benefits book . . . ," *id*., the clear "Statement of Grievance" was that the "company [was] not abiding by [the] negotiated rate structure for employee contribution toward medical benefits" – benefits which were bargained for during the negotiations for the CBA, *see* J.A. at 39-57, and which are expressly provided for in Paragraph 98. For these reasons, the scope test is inapplicable to this matter.

In deciding the arbitrability of this dispute, we begin with the presumption that national labor policy favors arbitration. *Cooper Tire*, 474 F.3d at 277. Our analysis is guided by the four principles

---

[1]ISP states in its brief:

> The Benefits Booklet, by its terms, is not a contract. The side letters and agreements referenced in *Cooper Tire* were binding contracts. While we believe the *Cooper Tire* standard should be used for determining the arbitrability of disputes arising over the Benefits Booklet, we do not concede that the Benefits Booklet is a binding contract.

ISP's Br. at 8 n.3. ISP argues that the matter of the employee contribution rate structure is not arbitrable because it is covered by the benefits book, yet simultaneously argues that the benefits book is not a binding contract. Under ISP's reasoning, the Union would have no recourse with regard to disputes concerning the rate structure as it may neither submit its grievance to arbitration because the rate structure is contained in the benefits book, nor enforce the rate structure in court because the benefits book is not an enforceable contract. ISP's position is, quite simply, untenable.

set forth by the Supreme Court in the *Steelworkers Trilogy*[2] and later collected in *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986). Those principles have been summarized by this circuit as follows:

> 1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; 2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is a question for judicial determination; 3) in making this determination, a court is not to consider the merits of the underlying claim; and 4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Cooper Tire*, 474 F.3d at 277-78 (quoting *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 485 (6th Cir. 2006)(internal citation omitted)). In cases involving broad arbitration clauses, the presumption of arbitrability is "particularly applicable," and only an express provision excluding a particular grievance from arbitration or "'the most forceful evidence of a purpose to exclude,'" can prevail. *United Steelworkers of Am. v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994) (quoting *AT&T*, 475 U.S. at 650 (internal citation omitted)).

ISP argues that the presumption of arbitrability does not apply here because the arbitration clause in the CBA is narrowly drawn to exclude the matter of employee contributions toward medical benefits from arbitration. In support of its argument, ISP cites two Third Circuit cases: *Trap Rock Industries v. Local 825*, 982 F.2d 884 (3d Cir. 1992) and *Local 827 v. Verizon New Jersey*, 458 F.3d 305 (3d Cir. 2006). In each of those cases, however, the court did not apply the presumption of arbitrability because the arbitration clauses were narrowly crafted, such that they

---

[2]*Steelworkers v. Am. Mfg. Co*., 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co*., 363 U.S. 574 (1960); *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).

clearly and unambiguously excluded the matter regarding which arbitration was sought. *See Trap Rock*, 982 F.2d at 888 n.5 (stating that "[b]ecause the arbitration provision . . . is narrowly crafted to apply only to certain disciplinary discharges and layoffs, we cannot presume, as we might if it were drafted more broadly, that the parties here agreed to submit all disputes to arbitration . . . . Thus, the presumption of arbitrability . . . [is] inapposite."); *Verizon*, 458 F.3d at 311 (finding the presumption inapplicable to a narrow clause and stating that "[i]f the arbitration clause is clearly broad or ambiguous, we will apply the presumption of arbitrability. If the clause is not ambiguous and clearly delimits the issues subject to arbitration, the presumption of arbitrability does not apply.").

Here, in contrast, the agreement to arbitrate broadly includes "any difference of opinion or dispute . . . regarding interpretation or application of any provision of this Agreement," *see* J.A. at 94, ¶ 44, with only three categories of matters excluded from arbitration, as set forth in Paragraph 52. The court finds that the arbitration clause in the instant matter is the type of broad clause for which this circuit holds the presumption is not merely applicable, but "particularly applicable." *See Cleveland Elec. Illuminating Co. v. Util. Workers, Local 270*, 440 F.3d 809, 814 (6th Cir. 2006) (observing that "the presumption of arbitrability is particularly applicable where the arbitration clause provides for arbitration of any controversy involving the interpretation of the CBA"); *see also Cooper Tire*, 474 F.3d at 279 (finding the presumption particularly applicable to a broad clause that provided for arbitration of "any dispute . . . as to the interpretation or application of this [a]greement"); *Mead*, 21 F.3d at 132 (finding the same where the clause provided for arbitration of "grievances charging that the Company has violated [the] [a]greement and involving the interpretation of, or compliance with, [the] [a]greement," despite the express exclusion of wages and wage rates from arbitration).

ISP argues that Paragraph 44, the paragraph defining grievances, is merely the provision which gives meaning to the term "grievance," and is not part of the arbitration clause. ISP contends that the arbitration clause consists solely of Paragraph 52, which is the paragraph that excludes certain matters from arbitration. Although the district court found this argument persuasive, we do not read the arbitration clause so narrowly. Instead, the entirety of Article X, entitled "Grievance and Arbitration Procedure," which includes both Paragraph 44 and Paragraph 52, is the "arbitration clause" to which the court will look in determining the arbitrability of this dispute. This follows from the fact that under the CBA, all unresolved grievances are subject to arbitration; hence, the definition of what is grievable is also the definition of what is arbitrable, subject, of course, to the three categories of excluded matters. We find that this is a broad arbitration clause, similar to the clause in *Mead*. *See Mead*, 21 F.3d at 132.

Although the presumption is particularly applicable, an "express provision excluding an issue from arbitration which allows a court to say 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute' rebuts the presumption of arbitrability." *United Steelworkers of Am., AFL-CIO, CLC v. Century Aluminum of Kentucky*, 157 F. App'x 869, 873 (6th Cir. 2005) (quoting *AT&T*, 475 U.S. at 650 (internal citation omitted)). Absent an express exclusion from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T*, 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 584-85). Here, there is no express exclusion of matters relating to employee contributions toward medical benefits, only a general exclusion of matters "not specifically covered" by the CBA. We find no forceful evidence of a purpose to exclude from arbitration claims relating to employee contributions toward medical benefits.

ISP's argument that the matter is not arbitrable because it is not "specifically covered" by the CBA is unavailing. The CBA expressly, albeit briefly, discusses employee contributions, and explicitly indicates where the parties may look to find the details of their agreement regarding the rate structure. Paragraph 98 of the CBA makes clear that employees are required to contribute to the medical benefits provided by the CBA and that the particulars of the matter are defined in the benefits book. J.A. at 105, ¶ 98. While this matter is addressed only in general terms in the CBA, it is, nevertheless, specifically covered.

This circuit has previously observed that if the provision upon which a party relies to exclude a particular dispute from arbitration is "equally consistent with opposing interpretations, and the language employed does not 'clearly and unambiguously describe[] the issue or issues excluded from arbitration,' the . . . language cannot be said to *expressly exclude* that issue." *Century Aluminum*, 157 F. App'x at 873-74 (quoting *United Steelworkers of Am., AFL-CIO-CLC v. Lukens Steel Co.*, 969 F.2d 1468, 1476 (3d Cir. 1992))(holding that a provision in a last chance agreement did not expressly exclude the parties' dispute from arbitration under the collective bargaining agreement). No provision of the arbitration clause clearly and unambiguously excludes the matter of employee contributions toward medical benefits, and ISP otherwise has failed to come forward with the requisite forceful evidence of a purpose to exclude this matter from arbitration, as required to overcome the presumption of arbitrability. *See Int'l Union, UAW v. United Screw & Bolt Corp.*, 941 F.2d 466, 472-73 (6th Cir. 1991) (compelling arbitration where the employer had not "satisfied the requirement for forceful evidence to overcome the presumption that the grievances should be arbitrated"). Consequently, this court must resolve any doubts in favor of arbitration.

Although the court has determined that the arbitration clause, on its face, is susceptible of an interpretation in which the matter at issue here is arbitrable, we also find persuasive the Union's

9

alternative argument that the language included in Paragraph 98 of the CBA is sufficient to incorporate by reference the employee contribution rate structure set forth in the benefits book into the CBA. Paragraph 98 provides that "[e]mployee contributions for [medical coverage] are defined in the benefits book." J.A. at 105. This statement clearly and unequivocally identifies the benefits book as the location where the details of the employee contribution rate structure for the medical benefits provided by the CBA may be found. As the Third Circuit has observed, "[i]ncorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Standard Bent Glass Corp., v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003); *see also* 11 Richard A. Lord, Williston on Contracts § 30.25 (4th ed. 1999)("So long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, and including a separate document which is unsigned.").

Incorporating the rate structure into the CBA will not result in surprise or hardship as it is undisputed that the parties bargained for and approved the rate structure for employee contributions during the negotiations for the CBA. The only place where the details of the rate structure may be found is the benefits book, which includes a disclaimer that it is not intended to be an enforceable contract. There is no requirement, however, that a writing be a contract to be incorporated by reference. *See generally* Williston on Contracts § 30.25. The court finds that the CBA's clear reference to the book in the same paragraph which guarantees medical coverage to employees and the parties' bargaining history indicate that the rate structure for employee contributions was intended to be part of the rights and obligations agreed upon by the parties in the CBA.

10

Our conclusion is bolstered by this court's reasoning in an analogous case. *See IBEW, Local No. 2020 v. AT&T Network Sys.*, 879 F.2d 864 (Table), No. 88-3895, 1989 U.S. App. LEXIS 10266, at \*16-17 (6th Cir. July 17, 1989). In *IBEW*, AT&T argued that the parties' collective bargaining agreement ("AT&T Agreement") excluded from arbitration matters relating to the calculation of an employee's term of employment. Several articles in the AT&T Agreement provided benefits to certain employees, with the level of benefits depending upon the employee's accumulated seniority with the company. *Id*. at \*13. The computation of seniority credits was made, not under the AT&T Agreement, but under the pension plan. AT&T argued that because computation of seniority credits was made under the pension plan and because the AT&T Agreement excluded disputes involving the pension plan from arbitration, disputes related to seniority computations were excluded from arbitration. This court disagreed and held that "it is not at all unreasonable to read the collective bargaining agreement as incorporating, by reference, those portions of the pension plan that have a direct bearing on the employee's bargained-for rights under the agreement." *Id*. at \*16. The court stated that the calculation of an employee's term of employment clearly would be covered under the CBA under such an interpretation. *Id*.

Similarly, here, the Union is not complaining about the benefits book, but about the potential infringement of contract rights guaranteed under the CBA, resulting from ISP's failure to adhere to the negotiated rate structure for employee contributions toward medical benefits. The right to arbitrate disputes concerning the benefits provided by Paragraph 98 of the CBA becomes "virtually meaningless" if there is no right to arbitrate decisions as to the employee contribution rate structure, which directly affects the availability of bargained-for rights. *See id*. Consequently, the CBA reasonably may be construed as incorporating by reference the parties' agreement regarding the rate

11

structure for employee contributions toward medical benefits, thereby bringing the matter squarely within the ambit of the CBA's arbitration clause.

## CONCLUSION

Because we cannot say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, this court must resolve any doubts in favor of arbitration. Accordingly, we REVERSE the judgment of the district court and direct that summary judgment be granted to the Union.