

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2003

# In Re Unisys

Precedential or Non-Precedential: Non-Precedential

Docket 02-1835

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"In Re Unisys " (2003). *2003 Decisions.* Paper 838.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/838

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1835

_____

HENRY ZYLLA; RICHARD SILVER; RONALD GRIPPO;
EDWARD LAWLER; RICHARD ANDUJAR; CLARENCE MULLER;
CHARLES WAHLER; JAMES McLAUGHLIN; DONALD RADER;
JOSEPH LAU; JAMES GANGALE; ALFRED CONTARINO;
RICHARD COLBY; JOHN MARCUCCI; JOSEPH FIORE;
RICHARD MASTRODOMENICO; NICK KLEMENZ;
PETER SZCZYBEK; on behalf of themselves and all others
similarly situated; ENGINEERS UNION LOCAL 444 OF THE
INTERNATIONAL UNION OF ELECTRONIC, ELECTRICAL,
SALARIED, MACHINE AND FURNITURE WORKERS, AFL-CIO;
LOCAL 445 OF THE INTERNATIONAL UNION OF
ELECTRONIC, ELECTRICAL, SALARIED, MACHINE
AND FURNITURE WORKERS, AFL-CIO; LOCAL 45O OF
THE INTERNATIONAL UNION OF ELECTRONIC,
ELECTRICAL, SALARIED, MACHINE AND FURNITURE
WORKERS, AFL-CIO; LOCAL 470 OF THE INTERNATIONAL
UNION OF ELECTRONIC, ELECTRICAL, SALARIED,
MACHINE AND FURNITURE WORKERS, AFL-CIO;
LOCAL 165 OF THE INTERNATIONAL UNION OF
ELECTRONIC, ELECTRICAL, SALARIED, MACHINE
AND FURNITURE WORKERS, AFL-CIO; LOCAL 3,
INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO

v.

UNISYS CORPORATION; EDWIN P. GILBERT; JOHN J.
LOUGHLIN; THOMAS PENHALE, individually and in their
capacities as members of the Unisys Employee Benefits
Executive Committee and administrators of the Unisys
Retirement Investment Plan; RICHARD H. BIERLY; CURTIS
A. HESSLER; LEON J. LEVEL; KENNETH L. MILLER;
DAVID A. WHITE; JACK A. BLAINE; STEFAN C.
RISENFELD; GEORGE T. ROBSON, individually and in their

capacities as members of the Investment Committee of the Unisys
Retirement Investment Plan

(Eastern District of PA Civil No. 91-cv-03772)


IN RE: UNISYS SAVINGS PLAN LITIGATION

JOHN P. MEINHARDT, on behalf of himself and all others
similarly situated; RICHARD SILVER; RONALD GRIPPO;
EDWARD LAWLER; RICHARD ANDUJAR; CLARENCE
MULLER; CHARLES WAHLER; JAMES MCLAUGHLIN;
DONALD RADER; JOSEPH LAU; JAMES GANGALE;
ALFRED CONTARINO; RICHARD COLBY; JOHN
MARCUCCI; JOSEPH FIORE; RICHARD MASTRODOMENICO;
NICK KLEMENZ; PETER SZCZYBEK


v.


UNISYS CORPORATION

(Eastern District of PA Civil NO. 91-cv-03067)


        Henry Zylla, Richard Silver, Ronald Grippo, Edward
        Lawler, Richard Andujar, Clarence Muller, Charles
        Wahler, James McLaughlin, Donald Rader, Joseph Lau,
        James Gangale, Alfred Contarino, Richard Colby, John
        Marcucci, Joseph Fiore, Richard Mastrodomenico,
        Nick Klemenz, Peter Szczybek, Local Union 444, Local
        Union 445, Local Union 450, Local Union 470,Local
        Union 165, and Local Union 3,

<u>Appellants</u>
_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Nos. 91-civ-03772 and 03067)
District Judge: Honorable Herbert J. Hutton

2

Submitted Under Third Circuit L.A.R. 34.1(a)
January 13, 2003

Before: SCIRICA, BARRY and SMITH, <u>Circuit Judges</u>

(Opinion Filed: January 30, 2003)

OPINION OF THE COURT

SMITH, <u>Circuit Judge</u>:

I.

This is an appeal by members of Locals 444, 445, and 470 of the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers (hereinafter "Appellants") from a grant of summary judgment in favor of Appellee Unisys on Appellants' breach of contract claims under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (hereinafter "LMRA"). For the reasons that follow, we will affirm the judgment of the District Court.

II.

Appellants are current or former unionized employees of defendant Unisys who, pursuant to a series of collective bargaining agreements, participated in a Unisys 401(k) defined contribution pension savings plan called the Retirement Investment Plan (hereinafter "the RIP"). Unisys's non-union employees participated in a 401(k) plan called the Unisys Savings Plan (hereinafter "the USP"). The RIP essentially was structured to be a mirror image of the USP, with the exception of the definition of service and the amount of

the company match, and both plans were administered together.  *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 426-27 (3d Cir. 1996)("*Unisys I*").

Both the RIP and the USP were "individual account plans" or "defined contribution plans," which receive preferential treatment under the Internal Revenue Code, and are also known as 401(k) plans.  *In re Unisys Savings Plan Litig.*, 1997 WL 732473, *2 (E.D. Pa. Nov. 24, 1997)("*Unisys II*").  Defined contribution plans provide benefits based upon the amount contributed to the participant's account, and any income, expenses, gains, and losses which may be allocated to the participant's account.  29 U.S.C. § 1002 (34).  In both the RIP and the USP, participants chose how their accounts were invested and received benefits based on the fair market value of their accounts at or near the time of distribution.[1] *Id*.  Defined contribution plans are inherently different from "defined benefit plans."  In the latter type of plan, "participants are promised, upon retirement, a benefit in the form of a fixed percentage of their pre-retirement salary."  29 U.S.C. § 1002 (34); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-41 (1999).  In contrast, participants in defined contribution plans "bear the risk of their investments."  29 U.S.C. § 1002 (34); *see also Hughes Aircraft Co.*, 525 U.S. at 439-41.

Participants in the RIP could choose to contribute to six different investment options: the Unisys Common Stock Fund; the Short-Term Investment Fund; the Indexed

---

[1]  Article 44(b) of the RIP, entitled "Computation of Member Accounts," provides that "Members' accounts shall be adjusted at the end of each month based on the fair market value of the assets of the Plan."

Equity Fund; the Active Equity Fund; the Diversified Fund; and the Insurance Contract Fund. The Fixed Income Fund, which is at issue in this litigation, was originally one of the six options, but was closed to new contributions, and proceeds from maturing investments in that fund were transferred to the Insurance Contract Fund (hereinafter "ICF"). The ICF invested in guaranteed investment contracts (hereinafter "GICs"), which are contracts issued mainly by insurance companies that promise to pay the principal investment at a designated future date, along with interest accrued. *Unisys I*, 74 F.3d at 426.

On April 11, 1991, the California Insurance Commissioner imposed a conservatorship upon Executive Life Insurance Company of California (hereinafter "Executive Life"), issuer of GICs held in certain funds in the Unisys Savings Plan and RIP. The Insurance Commissioner seized the assets of Executive Life and froze all payments on GICs issued by Executive Life, causing a potential loss to participants who invested in the GICs, including Appellants. As a result of the regulatory action taken against Executive Life, on April 15, 1991 Unisys implemented a Resolution that its Investment Committee had passed on August 10, 1990, permitting Unisys to freeze asset transfer requests in the event of a default by an insurance company pending the outcome of efforts to rehabilitate the company.[2]

---

[2]The Resolution, which was entitled "Savings Plan Insurance Contract Fund – Executive Life Contracts," stated the following: "RESOLVED, that in the event of a default in any of the guaranteed investment contracts or bank investment contracts held in the Unisys Employee Savings Thrift Trust fixed income funds, distributions to plan participants will be reduced by that portion of the participant's accounts held in the defaulted contract. A separate account will be maintained under the Trust into which all recoveries made with

Upon completion of the California regulatory proceedings concerning Executive Life, Appellants recouped all of their principal, plus interest. *Unisys II*, 1997 WL 732473, at \*17.

### III.

Appellants filed a second amended consolidated class action complaint against Unisys on November 25, 1991, challenging Unisys's administration of their savings plan assets. Counts I and II alleged, on behalf of both non-union and unionized Unisys employees, that Unisys breached its fiduciary duties under ERISA by purchasing GICs issued by Executive Life. In Count III of the complaint, which is the subject of this appeal, Appellants sought alternative relief under section 301 of the LMRA for breaches of collective bargaining agreements between Unisys and Appellants.

The District Court granted summary judgment in favor of Unisys as to Counts I and II (the ERISA claims). A prior panel of this Court vacated the dismissal of the ERISA claims and remanded for trial. *Unisys I*, 74 F.3d 420. Following a ten day bench trial, the District Court entered judgment in favor of Unisys. *Unisys II*, 1997 WL 732473. A prior panel of this Court affirmed that decision. *In re Unisys Savings Plan Litig.*, 173 F.3d 145 (3d Cir. 1999)("*Unisys III*"). Because the District Court found in *Unisys II* that Executive Life returned to the Appellants all of their principal, with interest, the parties agreed to

_____

respect to the defaulted contract will be deposited. Each participant who had any portion of his accounts held as part of the defaulted contract shall receive, either as a distribution or a credit to his account, a pro rata portion of the total recovery made from the defaulted contract at the time the recovery efforts terminate."

6

sever and stay the potentially duplicative breach of contract claims pending final resolution

of the ERISA claims. Following this Court's affirmance of *Unisys II*, the District Court

lifted the stay of the Count III LMRA claims. Subsequently, the District Court granted

summary judgment in favor of Unisys and later denied Appellants' motion for

reconsideration.

IV.

The District Court exercised jurisdiction pursuant to Section 301 of the Labor

Management Relations Act, 29 U.S.C. § 185.[3] We have appellate jurisdiction pursuant to

28 U.S.C. § 1291.

We exercise plenary review over the District Court's grant of summary judgment.

*Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs,* 982 F.2d 884 (3d

Cir. 1992). The determination of whether the terms of a collective bargaining agreement

are clear or unambiguous is a question of a law over which we also exercise plenary review.

*UAW v. Mack Trucks, Inc*., 917 F.2d 107, 111 (3d Cir. 1990).

Generally, we exercise plenary review of a district court's interpretation of contract

law, including the admissibility of parol or extrinsic evidence. *Martin v. Monumental  Life

Ins. Co.*, 240 F.3d 223, 232 (3d Cir. 2001)(citing *Sumitomo Machinery Corp. v. Allied*

---

[3]29 U.S.C. § 185 provides that: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

*Signal, Inc.*, 81 F.3d 328, 332 (3d Cir. 1996)). However, where, as here, a party makes known the substance of the evidence it desires to introduce, we review the District Court's decision for an abuse of discretion. *Martin*, 240 F.3d at 232.

V.

Appellants raise four arguments on appeal. First, Appellants argue that the District Court erred in concluding that Local 444 members, who participated in the RIP, were bound by Unisys's August 10, 1990 resolution freezing asset transfers pending the outcome of California regulatory proceedings regarding Executive Life. We disagree. Although the Resolution, which is set forth in Footnote 2, *supra*, applied on its face to the USP as opposed to the RIP, the plain language of the CBA between Local 444 and Unisys demonstrates that the parties intended the RIP to mirror the USP. Consequently, we conclude that Local 444, by its participation in the RIP, was bound by the August 10 resolution. Appellants concede in their brief that Article 28, Section 5D of Local 444's CBA contained a mirror image clause providing that "[t]he Unisys Retirement Investment Plan shall conform with the Unisys Savings Plan in all respects, except for the definition of Service and the rate of contribution on the part of the Company." Agreement between Surveillance and Fire Control Systems Division and the Systems Management Unit of Shipboard and Ground Systems Group, Unisys Corp. and International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers A.F.L.– C.I.O and Engineers Union, Local 444 I.U.E.E.S.M.F.W., A.F.L.– C.I.O. (Sept. 10, 1988 - Sept. 6, 1991) (hereinafter cited as "Local 444 CBA"). Paragraph 2 of Section 5D further provides that:

8

> Any future changes to the Unisys Savings Plan, exclusive of rate of contribution on the part of the Company and the definition of service, will automatically apply to the Unisys Retirement Investment Plan and all interpretations and administrative practices which apply to the Unisys Savings Plan shall apply to the Unisys Retirement Investment Plan.

*Id.* The plain language of 5D is clear and unambiguous, and demonstrates that the parties intended the two plans to mirror one another.

We conclude that the August 10 resolution constituted an "administrative practice" which automatically applied to the RIP under Section 5D. The resolution did not seek to change the provisions of the CBA, but sought only to provide a temporary framework for managing assets trapped in an Executive Life fund pending the outcome of California's regulatory proceedings.

We find further support for our conclusion that Local 444 should be bound by the resolution in the RIP Prospectus, which states that "the Administrative Committee may amend, modify or discontinue the Plan in whole or in part at any time,"[4] and that "the Plan may be amended to comply with applicable law, regulation, or the requirements of any governmental authority." Here, Unisys enacted the resolution not to deprive Local 444 members of benefits under the Plan; any benefits they had accrued were frozen by

---

[4] The amendment language is qualified by the statement that "no amendment may cause the Company to recapture any contributions previously made to the trust before all obligations to members and beneficiaries under the terms of the trust are satisfied. No amendment may deprive any member or beneficiary of benefits or contributions accrued before the amendment without that person's consent." These qualifications are not implicated here because Unisys was not depriving union members of any benefits, but merely regulating how they would be distributed following the completion of third-party regulation.

9

California regulators. Unisys simply enacted an administrative framework for determining how to distribute any benefits pending the resolution of the regulatory proceedings. For the foregoing reasons, we will affirm the District Court's determination that Local 444 is bound by the August 10 resolution.

The second argument Appellants assert on appeal is that the District Court erred in concluding that Locals 445 and 470 were bound by Unisys' August 10, 1999 resolution. We agree with the District Court's conclusion that the RIP as applied to Local 445 and Local 470 was intended to mirror the USP. Consequently, any change to the USP, such as the administrative decision to temporarily freeze asset transfers when Executive Life was seized in April 1991 automatically applied to the RIP.

Although the CBAs of Locals 445 and 470 do not contain express mirror image clauses, there is sufficient evidence that the parties intended the RIP to mirror the USP in other plan documents that were incorporated by reference into the CBA.[5] Three documents signed by bargaining representatives from Local 445 and Local 470 demonstrate that the parties intended the RIP to mirror the USP in all respects, with the exception of rate of contribution and definition of service. First, Locals 445 and 470 entered into a "Memorandum of Agreement" with Unisys on September 12, 1988 stating that "except as

---

[5]Section 7B1 of Local 444's CBA with Unisys expressly provides that "Article 28 includes by reference the applicable . . . Plan Documents, Certificates or other documents which legally govern the provision of benefits under the present and previous Retirement Investment Plan, Retirement Pension Plan, the previous Sperry Retirement Annuity Plan and Medical, Dental and Life Insurance Plans." Local 444 CBA at § 7B1.

10

modified, all of the provisions of the agreements between the parties shall be extended to and including 11:59 P.M. September 5, 1991." The Agreement went on to state that "RIP in all respects [is the] same as Unisys Savings Plan." *Id.* The second document signed by the Locals was a September 13, 1988 "Retirement Investment Plan." This document represented a settlement agreement between Unisys and the International Union of Electrical Workers (of which Locals 445 and 470 were members) Conference Board, in which the parties agreed that:

> The Retirement Investment Plan shall continue to conform with the Unisys Savings Plan in all respects, except for the definition of Service and the rate of contribution on the part of the Company. Any future changes to the Unisys Savings Plan (exclusive of rate of contribution on the part of the Company and the definition of Service), will continue to automatically apply to the Retirement Investment Plan and all interpretations and administrative practices which apply to the Unisys Savings Plan shall apply to the Retirement Investment Plan.

The third document indicating that the parties intended the RIP to be a mirror image of the USP is a "Memorandum of Agreement" entered into on September 10, 1982, acknowledging the creation of the Sperry RIP (predecessor to the Unisys RIP) and stating that:

> Any future changes to the Part B of the Sperry Retirement Program exclusive of rate of contribution on the part of the Company will automatically apply to the Sperry Retirement Investment Plan and all interpretations and administrative practices which apply to the Part B of the Sperry Retirement Program shall apply to the Retirement Investment Program.

We agree with the District Court's conclusion that the agreements between Locals 445 and 470 and Unisys clearly demonstrate that the Locals agreed that the RIP would be

11

identically administered with the USP, except for the definition of service and rate of company contribution. Consequently, the District Court correctly cautioned that "[t]he Locals cannot now contest that decision, as the language they agreed to, permits Unisys to make universal decisions in administering its retirement plans."

The third argument raised by Appellants is that the District Court erred in excluding extrinsic evidence under the past practices clause of the Locals' CBAs with Unisys. The District Court did not abuse its discretion in making this determination and we will affirm. Appellants sought to introduce extrinsic evidence to show that Unisys had a "past practice" of valuing FIF account balances at book value rather than fair market value. The plain language of Article 24 of the Unisys RIP, which was incorporated by reference into the Locals' CBAs, states that "Members' accounts shall be adjusted at the end of each month based on the fair market value of the assets of the Plan." Because the plain language of the contract is unambiguous, we believe that an admonition we have given previously applies here: "if the plain language of the document is clear, courts must not look to other evidence . . . . Although extrinsic evidence may be considered under proper circumstances, the parties remain bound by the appropriate objective definition of the words they use to express their intent." *Bill Gray Enter., Inc. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2002).

Appellants cite Article 18 of the CBA in support of their contention that "for three years before and 31 months after September 10, 1988, the effective date of the CBA, account balances were valued at book value . . . which was a practice that was not provided for as a written term of the CBA or the incorporated RIP Plan Document." The "past

12

practices" clause of Article 18 provides that:

> This Agreement shall not be deemed to impair any conditions of employment more beneficial to the employees than those provided herein, and any conditions of employment *not covered by this Agreement* which are beneficial to employees and which are now in effect as regular company practice shall be continued during the period of this Agreement unless there is good cause for their withdrawal. Either party may demand arbitration with respect to a dispute as to whether good cause exists. (Emphasis added).

Local 444 CBA Art. 18.B. We conclude that Article 18 does not cover the dispute at issue because the past practices clause only applies to "conditions of employment not covered by this agreement." The collective bargaining agreement incorporated by reference the terms of the Unisys Savings Plan and permitted Unisys to apply all of the USP's changes and administrative practices to the RIP. Thus, the CBA did in fact "cover" the terms of the RIP, and the past practices clause does not apply.

Additionally, even if the District Court had erred in refusing to admit extrinsic evidence on the issue of whether a "past practice" of valuing FIF accounts at book value existed, this Court has recently cited Federal Rule of Civil Procedure 61 for the proposition that "no error in . . . the exclusion of evidence . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 235 (3d Cir. 2001). Because the contract language of the CBA is unambiguous and the exclusion of evidence was not inconsistent with substantial justice, we will affirm the District Court's decision to exclude extrinsic evidence regarding a past practice of valuing accounts at book

13

value.

Appellants' final contention on appeal is that the District Court erred in declining to direct a jury trial on damages. Since the District Court correctly determined that the past practices clause of the collective bargaining agreement was not breached, the District Court's decision not to direct a jury trial on the issue of damages must be affirmed.

VI.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Unisys.

_____

TO THE CLERK:

Please file the foregoing Opinion.


                                    /s/ D. Brooks Smith
                                    Circuit Judge

14