**SUPER FRESH FOOD MARKETS, INC.**

**v.**

**UNITED FOOD AND COMMERCIAL WORKERS LOCAL UNION 1776**

No. 01–CV–6075.

United States District Court,
E.D. Pennsylvania.

Feb. 7, 2003.

John A. Di Nome, Reed, Smith, Shaw & Mc Clay, Phila, Peter D. Post, Reed, Smith LLP, Pittsburgh, for Super Fresh Food Markets, Inc., Plaintiff.

Laurence M. Goodman, Willig, Williams & Davidson, Phila, for United Food & Commercial Workers Local Union 1776, Defendant.

### MEMORANDUM AND ORDER

HUTTON, District Judge.

In this case, Plaintiff Super Fresh Markets, Inc. ("Super Fresh" or "the Company") is suing Defendant United Food and Commercial Workers ("UFCW") Local Union 1776 ("Union"), asking this Court to vacate an arbitration award issued by labor arbitrator Margaret R. Brogan on November 16, 2001. In response, the Union counterclaimed, seeking confirmation of the Brogan Award and an order directing Super Fresh to comply with it. In her opinion, the arbitrator found that Super Fresh violated the Collective Bargaining Agreement by entering into the sale of a Super Fresh store without first offering the store to the employees. Presently before the Court are the parties' cross-motions for summary judgment (Docket Nos. 6 & 7). As discussed below, Defendant's Motion for Summary Judgment (Docket No. 6) is granted and Plaintiff's motion (Docket No. 7) is denied. The arbitration award is enforced.

### I. BACKGROUND

This case arises out of the arbitration of a grievance filed by the Union on July 18, 2001, challenging the sale of a Super Fresh grocery store in Lansdowne, Pennsylvania to a real estate development company, Long View Development LP ("Long

View"). At all relevant times, the Company and the Union have been parties to a collective bargaining agreement ("CBA").[1] The CBA provides for a grievance procedure, which culminates in arbitration, pursuant to the Voluntary Arbitration Rules of the American Arbitration Association ("AAA"). In its grievance, the Union challenged the proposed sale of the Lansdowne store under two CBA provisions, Article 27.1 and paragraph 12 of Addendum III ("Addendum III").[2]

Article 27.1 of the CBA provides, in pertinent part:

> 27.1 This Agreement shall be binding upon the successors and assigns of the Parties hereto. In the event of a bona fide sale, transfer, franchising or joint venture agreement, of the store covered by this Agreement during the term hereof, the Employer shall give advance notice to the new owner of such transferee of obligation of this Agreement *and shall as a condition of sale, transfer, franchising or joint venture agreement, require the new party to become a party hereto.* The Employer shall be responsible for any and all monetary benefits that associates have accumulated under this Agreement to the date of sale, transfer, franchising or joint venture agreement. Seniority of associates shall not be broken by such sale, transfer, franchise or joint venture agreement.

Arb. Award at 2 (emphasis added). In arbitration, the Union claimed that Super Fresh violated this provision because it did not condition the sale of the Lansdowne store on the successor's willingness to become a party to the CBA. *Id.* at 13.

Addendum III provides, *inter alia,* that if a Super Fresh store is closed or transferred to a third party, "then the employees of the store to be closed ("the Affected Employees") or the Employee Association ("PACE")[3] *shall have the right to purchase said store at a fair price* ("Fair Price"). *The mechanism for determination of the Fair Price shall be the subject of further negotiations between the Parties." Id.* at 4 (emphasis added). In arbitration, the Union argued that Super Fresh violated this provision when it failed to provide the Union or the employees of the Lansdowne store with the opportunity to purchase the store before the proposed sale to Long View. *Id.* at 13–14. The following history represents the facts as found by the arbitrator. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

In March 1982, the Great Atlantic and Pacific Tea Company ("A & P") announced that it was closing all its grocery stores in Philadelphia and the surrounding area. This announcement led to negotiations between A & P and two of its unions, UFCW Locals 1776 and 56. These negotiations resulted in an agreement, dated April 1, 1982, providing for the creation of a new entity, now known as Super Fresh, to operate some of A & P's Philadelphia area stores. This initial agreement has been included in each subsequent CBA at Addendum III.

---

**1.** The Defendant Union, United Food and Commercial Workers ("UFCW") Local 1776, is the successor to Local 1357, the party to the original CBA. Pl.'s Mem. at 2; Def.'s Mem. at 5–6.

**2.** In its filings, Super Fresh refers to paragraph 12 of Addendum III as "Paragraph 12 of the Agreement in Principle." In her opin-

ion, Arbitrator Brogan refers to the provision as paragraph 12 of Addendum III. For consistency, this Court will refer to the provision as "Addendum III."

**3.** PACE is an employee organization that no longer exists. Arb. Award at 8.

In August 1993, Donald Dauphin, a Super Fresh executive, informed the Union that the Company was planning to close and sell its store in Llaneroh, Pennsylvania. Arb. Award at 12. Mr. Dauphin enclosed a waiver form with this letter and asked the Union to waive its "right of first refusal" in the event that such a sale took place. *Id.* The Union agreed to this waiver. Def.'s Mem. at 13.

On August 17, 1998, Super Fresh sent a letter to the Union stating that it planned to close the Progress Plaza Super Fresh store "Tuesday at 8:30 a.m." Arb. Award at 12. In response; the Union obtained a restraining order and an order to show cause in the Philadelphia Court of the Common Pleas. At the hearing, the Union learned that Super Fresh was planning to sublease the store to the Raspino/Wargo Organization ("Wargo"). *Id.* The Union negotiated with Wargo about whether it would assume the CBA, pursuant to Article 27.1. *Id.* The deal, however, fell through.

The two clauses at issue in this case were the subject of recent negotiations between the parties. In March 2000, during CBA negotiations, Super Fresh proposed that both sections be deleted. *Id.* at 11. The Union responded by rejecting the deletion of Article 27.1 and proposing alternative language to Addendum III. *Id.* Super Fresh rejected this counterproposal and both provisions, in their original form, remained in the CBA. *Id.*

The circumstances that gave rise to the current dispute began on June 15, 2001. On that date, Super Fresh informed the Union that the Lansdowne store was closing on July 7, 2001. *Id.* at 6. Later that month, at a zoning hearing regarding the Lansdowne site, a Long View representative announced that Long View intended to develop the site for lease to Giant Super-

market, a non-union grocery store chain. *Id.* at 7.

On July 18, 2001, the Union filed a grievance with Super Fresh claiming that the proposed sale violated Article 27.1 and Addendum III of the CBA. Def.'s Mem. at 3. The parties were unable to resolve the grievance and, pursuant to the CBA, the matter was referred to arbitration. *Id.* at 4. Hearings were held before arbitrator Margaret R. Brogan on September 25, 2001 and October 30, 2001. Arb. Award at 1. At the hearing, the parties granted the arbitrator the authority to frame the issues presented. *Id.* Arbitrator Brogan found that the grievance presented the following issues:

1) Did the company violate Article 27.1 of the master collective bargaining agreement between [Super Fresh] and [the Union] when it failed to require as a condition of the sale in issue that the purchaser become a party to the collective bargaining agreement, and if so, what shall be the remedy?

2) Does Addendum III apply to the sale in issue, and if so, did the Company violate Addendum III by failing to provide the Union or employees of [the Lansdowne store] with the opportunity to purchase the store prior to the Company's marketing and selling of the store, and if so, what shall be the remedy?

3) If Addendum III does apply to the sale in issue, did the Company violate it when it failed to assure that the rights and options in Addendum III were recorded against the property, and if so, what shall be the remedy?

*Id.* at 1–2.

On November 5, 2001, Arbitrator Brogan issued her Award and Opinion, upholding the Union's grievance. She made the following findings: (1) Super Fresh violated Article 27.1 by not requiring, as a

condition of the sale, that the successor assume the obligations of the CBA and recognize the accrued seniority of any Union employees hired by the successor; and (2) Super Fresh violated Addendum III when it failed to offer the current employees, through the Union, the right to purchase the Lansdowne store at a fair price prior to entering the Long View deal. Additionally, Arbitrator Brogan ordered the following remedies: (1) Super Fresh was ordered not to sell, transfer, franchise, or enter into a joint venture agreement as to any store covered by the CBA without conditioning the transfer on the successor becoming a party to the CBA; (2) Super Fresh was ordered to offer the Union or the current employees the right to purchase any store under the CBA pursuant to Addendum III before offering the property to a third party; and (3) the parties were ordered to enter into negotiations to create a mechanism for implementation of Addendum III. The arbitrator retained jurisdiction over the grievance for six months to ensure the parties were complying with the remedies.

On December 4, 2001, Super Fresh filed this action, seeking to vacate the arbitration award. For its part, the Union counterclaimed, seeking enforcement of the award. The parties' cross-motions for summary judgment are presently before the Court.

## II. *LEGAL STANDARD*

### A. *Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file showing a genuine issue of material fact for trial. *Id.* at 324, 106 S.Ct. 2548. The substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then there is a genuine issue of fact. *Id.*

When deciding a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.* Nonetheless, a party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. *Trap Rock Indus., Inc. v. Local 825,* 982 F.2d 884, 890 (3d Cir.1992).

### B. *Review of Arbitration Awards*

Public policy strongly favors private resolution of labor disputes. *Misco,* 484 U.S. at 36, 108 S.Ct. 364. Because the parties bargained for an arbitrator's resolution of the dispute, rather than a judge's, district courts have an extremely limited scope of review over an arbitration award. *Id.* at 36–38, 108 S.Ct. 364. An award will

only be set aside in rare circumstances, such as where the arbitrator ceases to apply the provisions of the CBA and effectively "dispense[s] [her] own brand of industrial justice." *Steelworkers v. Enterprise Wheel & Car. Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The award will be enforced "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [her] authority." *Misco*, 484 U.S. at 40, 108 S.Ct. 364.

There are, however, certain situations where an arbitration award may be set aside. Two of those situations are implicated in this case. First, a court may not enforce any contract, including a CBA, that is illegal or contrary to public policy. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83–84, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). Second, a court may refuse to enforce an arbitration award when the arbitrator shows "a manifest disregard of the agreement." *Pa. Power Co. v. Local Union No. 272 of the IBEW*, 276 F.3d 174, 179 (3d Cir.2001).

## III. DISCUSSION

Super Fresh challenges the arbitration award on several grounds. First, it argues that Article 27.1, as interpreted and applied by the arbitrator, violates sections 8(e), 8(b)(4)(A) & (B), 8(b)(1)(A), and 8(a)(2) of the National Labor Relations Act ("NLRA"). Alternatively, it argues that the arbitrator's interpretation of Article 27 improperly adds to, alters, or amends the CBA. Second, Super Fresh argues that Arbitrator Brogan's interpretation of Addendum III improperly adds to, alters, or amends the CBA. Each of these arguments is discussed in turn below.

### A. Legality of Article 27.1

#### 1. Sections 8(e) and 8(b)(4)(A)

The arbitrator found that Super Fresh violated Article 27.1 when it failed to re-

quire, as condition to the sale of the Lansdowne store, that any successor operating a grocery store on that site must assume the obligations of the CBA. Arb. Award at 21–22. Super Fresh claims that this portion of the award must be vacated because Article 27.1, as applied by the arbitrator, violates §§ 8(e) and 8(b)(4)(A) of the NLRA. Pl.'s Mem. at 11–21. It follows, Super Fresh argues, that this Court is being asked to enforce an illegal contract, in violation of the Supreme Court's holding in *Kaiser Steel*, discussed above.

Section 8(e) of the NLRA, 29 U.S.C. § 158(e), provides, in pertinent part, as follows:

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to ... cease doing business with any other person, and any contract or agreement entered into ... containing such an agreement shall be to such extent unenforceable and void ....

Section 8(e), the so-called "hot cargo" provision, is designed to protect neutral employers from being caught in a dispute between one of its unions and a third party. *Kaiser Steel*, 455 U.S. at 84, 102 S.Ct. 851. The strict language and legislative history of § 8(e) renders hot cargo clauses "void at their inception and at all times unenforceable by federal courts." *Id.* Section 8(b)(4)(A) is the enforcement provision for § 8(e). This provision makes it unlawful for any union to require "any employer ... to enter into any agreement which is prohibited by [section 8(e) ]." 29 U.S.C. § 158(b)(4)(A). Super Fresh argues that Arbitrator Brogan's interpretation of Article 27.1 violates §§ 8(e) and

8(b)(4)(A) because it allows the Union to pressure Super Fresh, the allegedly neutral employer, into assisting the Union in disputes with any third party employers intending to operate a grocery store on the Lansdowne site. Pl.'s Mem. at 12.

■ To evaluate whether the application of this CBA provision violates §§ 8(e) and 8(b)(4)(A), the Court makes two determinations. First, the Court must determine whether the transfer of the Lansdowne store constitutes "doing business" within the meaning of § 8(e). *Amax Coal Co. v. NLRB*, 614 F.2d 872, 885–86 (3d Cir.1980), *rev'd on other grounds*, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981). Second, the Court must determine whether "under all the surrounding circumstances, the Union's objective was preservation of work for [Super Fresh's] employees, or whether the agreement . . . [was] tactically calculated to satisfy union objectives elsewhere." *National Woodwork Mfrs. Assoc. v. NLRB*, 386 U.S. 612, 644, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). This test is commonly known as the "work preservation" requirement. Its purpose is to determine whether the CBA provision at issue is addressing primary labor relations, i.e., the labor relations of an employer and its own workers, or secondary labor relations involving the union and another employer. *Id.* at 645, 87 S.Ct. 1250.

a. *"Doing Business"*

■ Section 8(e) prohibits, *inter alia*, secondary pressure from being used to force a neutral employer to cease "doing business" with a third party. 29 U.S.C. § 158(e). The phrase "doing business" is defined as "a continuing business relationship which is capable of being discontinued by one employer in order to force another employer to accede to union demands." *Amax Coal*, 614 F.2d at 885–86. If a CBA provision requires the parties to the agreement to maintain such a continuing business relationship, then it violates § 8(e) and its enforcement violates § 8(b)(4)(A). *Id.* at 886.

Super Fresh points out that Article 27.1, as applied by the arbitrator, requires it to condition the sale or lease of any store covered by the CBA on the prospective purchaser's willingness to become a party to the CBA. Pl.'s Mem. at 14. It follows, Super Fresh argues, that Article 27.1 requires it and the Union to remain in a relationship which, if terminated by Super Fresh, would force another employer to accede to the Union's demands. *Id.* In response, the Union argues that a successorship provision, such as the one in Article 27.1, does not require any continuing business relationship between the parties. Def.'s Reply Mem. at 10. Both parties rely on the Third Circuit's decision in *Amax Coal* to support their respective arguments.

In *Amax Coal*, the union proposed two CBA provisions that the employer protested as violative of §§ 8(e) and 8(b)(4)(A). 614 F.2d at 885–87. The first provision conditioned any sale or conveyance of Amax's coal operations upon the successor's assumption of Amax's CBA obligations. *Id.* at 885. The court held that this provision did not constitute a continuing business relationship because there would be no further business between Amax and the purchaser. *Id.* at 886. The second provision conditioned the lease or licensing of any Amax operations on the lessee's assumption of Amax's obligations under the CBA. *Id.* at 887. In contrast to the successorship provision, the Third Circuit found that the leasing/licensing provision violated § 8(e) because the provision required a continuing relationship between Amax and lessee that would result in pressure on the lessee to comply with the union's demands. *Id.*

Super Fresh argues that Article 27.1 is distinguishable from the successorship clause upheld by the *Amax Coal* court. Def.'s Mem. at 15–17. The *Amax* successorship clause provided that Amax could not sell or otherwise convey its operations without first securing an agreement from the successor to assume Amax's CBA obligations. 614 F.2d at 885. The clause, however, also provided that the union could only look to the successor, and not Amax, to ensure compliance. *Id.* In contrast, Article 27.1 does not contain any language preventing the Union from pursuing Super Fresh in the event that a transfer takes place without a purchaser agreeing to assume Super Fresh's CBA obligations. Def.'s Mem. at 16. Super Fresh points out that the Union could enforce Article 27.1 by pressuring it to cancel a potential sale unless the buyer assumes the CBA. *Id.* It follows, Super Fresh argues, that Article 27.1 is more akin to the *Amax Coal* leasing/licensing provision in that it may affect ongoing business relations between Super Fresh and a potential purchaser. *Id.* at 14–16.

This Court finds that Article 27.1, as applied to the sale of the Lansdowne store, does not create the type of ongoing business relationship prohibited under § 8(e). The Third Circuit described the successorship clause that it upheld in *Amax Coal* as "a clause that would require Amax to condition any sale or conveyance of its operations upon the successor's assumption of Amax's obligations under the agreement." 614 F.2d at 886. In this part of the opin-

ion, the Court did not place any emphasis on the clause limiting the union's avenues for redress in the event of a violation. *Id.*

Moreover, this Court cannot discern how the absence of this clause creates the kind of ongoing business relationship presented by a lease or license. In *Amax*, the court struck the leasing/licensing clause because it required Amax to "*discontinue* a the licensing agreement if the licensee *ever stopped recognizing* the Union . . . ." *Id.* at 887 (emphasis added). The language used by the court shows that the it was concerned about some future conduct that might occur *during the course of the licensing agreement,* not conduct occurring *during the negotiation of the licensing agreement* itself. The court was concerned that the clause allowed the union to force Amax to pressure the licensee, a party in a continuous business relationship with Amax, into compliance with Union demands. *Id.* In contrast, once the sale of the Lansdowne store is complete, there is no ongoing business relationship that can be used to pressure the purchaser to accede to the Union's demands. Once the current CBA expires, the purchaser can deal with the Union on its own terms without the danger of any pressure being applied by Super Fresh. Accordingly, there is no ongoing relationship of the kind prohibited in § 8(e). Super Fresh's argument must be rejected, and this portion of the award must be enforced.[4]

In the alternative, Super Fresh argues that, even if Article 27.1 does not create an

4. In its Memorandum, Super Fresh asserts that Arbitrator Brogan also applied Article 27.1 to leased property, such that Super Fresh cannot lease any of its stores without conditioning the lease on the lessee's acceptance of the CBA. Def.'s Mem. at 16. Such a holding would, of course, violate § 8(e) as interpreted in *Amax*.

After examining the Award, the Court cannot find any language supporting this asser-

tion. In paragraph two of her Award, Arbitrator Brogan does apply Article 27.1 to "any purchaser, or its lessees or assigns." This language appears to be aimed at preventing a "straw man" approach whereby Super Fresh sells to a third party, such as Long View, who then immediately leases the property to a grocery store operator, such as Giant. Accordingly, this argument is also rejected.

ongoing relationship between it and a potential buyer, the clause still violates § 8(e) because buying and selling real estate are part of the regular business of a retail food chain. When the buying and selling of a particular item or operation are common in an industry, conditioning a sale on the purchaser's adoption of a CBA may constitute "doing business" under § 8(e). *Nat'l Mar. Union of Am. (Commerce Tankers Corp.),* 1972 WL 12380, 196 N.L.R.B. 1100(1972), *enforced,* 486 F.2d 907 (2d Cir.1973).

In *Commerce Tankers,* the NLRB held that a steamship purchaser could not be required to adopt a labor agreement as a condition of the purchase because the buying and selling of steamships was common in the industry. *Id.* Super Fresh argues that, in a similar fashion, the buying and selling of real estate is common to the retail food selling industry. Super Fresh points out that, since 1992, it has closed over 50 stores in the Mid–Atlantic region and has sought to sell most of these properties to other parties. Def.'s Mem. at 17 & Ex. 3–4. This scant evidence, standing alone, is insufficient for this Court to determine that retail food chains routinely buy and sell real estate. Super Fresh offers no evidence as to its competitor's buying and selling statistics or even how many other stores in the region it has kept open. Accordingly, this argument must be rejected.

As a third alternative argument, Super Fresh points to the recent decision in *Taylor Milk Co. v. Int'l Bhd. of Teamsters,* 248 F.3d 239, 246 (3d Cir.2001), for the proposition that the union has improperly "disrupted the sale negotiations" of the Lansdowne store. Def.'s Mem. at 18. In *Taylor Milk,* the union improperly coerced a neutral party, Borden, Inc., into ceasing business with a dairy, Taylor Milk Company. *Id.* at 242. In contrast, in the instant case the Union is dealing only with Super Fresh and, as in *Amax Coal,* no neutral third party has "yet appeared on the scene." *Id.* at 246. Accordingly, *Taylor Milk* does not support a theory that Article 27.1 violates § 8(e).

### b. *"Work Preservation"*

■ Even if the conveyance of the Lansdowne store constitutes "doing business" within the meaning of § 8(e), Article 27.1 is nonetheless lawful because its effects are primary. *Nat'l Woodwork,* 386 U.S. at 644, 87 S.Ct. 1250. In *National Woodwork,* the Court found that Congress intended § 8(e) to prohibit only unlawful "secondary" labor objectives. *Id.* at 620–44, 87 S.Ct. 1250. As such, § 8(e) applies only to conduct and agreements aimed at a third-party employer or intended to benefit union workers generally. CBA provisions designed to preserve the jobs of bargaining unit employees do not violate § 8(e). *Amax Coal,* 614 F.2d at 886–87.

■ Super Fresh argues that the purpose of Article 27.1, as interpreted by Arbitrator Brogan, is to benefit union workers in general, rather than to protect the jobs of the employees covered under the CBA. Def.'s Mem. at 18–21. Super Fresh bases this argument on the fact that Arbitrator Brogan did not issue a ruling requiring the purchaser of the Lansdowne store to hire any of the current store employees. *Id.* at 19–20. Super Fresh argues that, because a purchaser must assume the CBA but need not hire any bargaining unit employees, the purpose of Article 27.1 is to benefit the union generally, rather than to preserve current jobs. *Id.* This argument, however, must be rejected.

In *Amax Coal,* the court found that a similar successorship provision was lawful because its effects were primary. 614 F.2d at 886. The clause at issue in *Amax Coal,* like Article 27.1, did not require a

purchaser to hire any of Amax's current employees. *Id.* at 885. Instead, it merely required Amax, as a condition to the sale of any operations, to secure the purchaser's agreement to adopt the CBA. *Id.* at 886. The court found that this clause was primary in effect because its only purpose was to benefit Amax's own employees by ensuring that they were covered under a CBA in the event that their place of employment was sold. *Id.* at 886–87. Similarly, Article 27.1 does not seek to promote any Union goals other than preserving the jobs at the Lansdowne store. Once the store is actually sold and the purchaser agrees to undertake the CBA, the purchaser becomes the primary employer and Super Fresh can no longer apply any secondary pressure to it.

In sum, Super Fresh has not shown that Article 27.1, as applied to the sale of the Lansdowne store, violates §§ 8(e) and 8(b)(4)(A). First, Article 27.1's application to the Lansdowne sale does not create the kind of ongoing business relationship barred by § 8(e). To the contrary, this type of successorship clause was upheld by the Third Circuit in *Amax Coal.* Moreover, the effects of Article 27.1 are primary, not secondary. Accordingly, Super Fresh's argument that Article 27.1 violates §§ 8(e) and 8(b)(4)(A) is rejected.

### 2. Sections 8(b)(4)(B), 8(b)(1)(A), and 8(a)(2)

■ Super Fresh also argues that Arbitrator Brogan's application of Article 27.1 violates several other sections of the NLRA. First, Super Fresh argues that the application of Article 27.1 amounts to "top-down" organizing, in which unions use economic coercion to force recognition by an employer regardless of the wishes of its employees. This practice is barred by § 8(b)(4)(B). 29 U.S.C. § 158(b)(4)(B); *Connell Constr. Co., Inc. v. Plumbers and*

*Steamfitters Local Union No. 100,* 421 U.S. 616, 632, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975).

The Court finds that the application of Article 27.1 does not violate § 8(b)(4)(B). That section deals with organizational campaigns. In this case, the Union is not seeking to organize a new unit at a non-union employer, but merely seeking an extension of the current CBA. At the expiration of that CBA, the purchaser of the Lansdowne store is free to negotiate with the union on its own terms.

■ Second, Super Fresh argues that Arbitrator Brogan's application of Article 27.1 allows the Union to violate § 8(b)(1)(A) by seeking minority recognition. Section 8(b)(1)(A) prohibits a union from using economic coercion to impair an employee's right to self-organization under § 7 of the Act. 29 U.S.C. §§ 157 & 158(b)(1)(A). Super Fresh argues that Article 27.1 violates § 8(b)(1)(A) because it allows the Union to seek recognition by the purchaser of the Lansdowne store without first being chosen by that employer's workers as the bargaining unit representative. Pl.'s Mem. at 22. It follows, Super Fresh argues, that it, as an employer, would also violate § 8(a)(2) of the Act by acquiescing in this type of prohibited union conduct. *Id.*

This Court finds that Article 27.1, as applied, does not violate §§ 8(b)(1)(A) and 8(a)(2) of the Act. By seeking to enforce Article 27.1 of the current CBA, the Union is not attempting to achieve minority recognition at the expense of unrepresented workers. Instead, it is merely acting on behalf of its own members to enforce an agreement to which Super Fresh consented after extensive negotiations. Moreover, as the Union correctly points out, there has not yet been any violation of §§ 8(b)(1)(A) or 8(a)(2) because the successor store has not hired any employees. In

the event that the Union does somehow seek to force minority recognition, then Super Fresh may bring these claims before the National Labor Relations Board.

In sum, Super Fresh is unable to show that Article 27.1 of the CBA is illegal or contrary to public policy. Accordingly, in order to have this portion of the award vacated, Super Fresh must meet the heavy burden of demonstrating that Arbitrator Brogan exceeded her authority. This argument is discussed below.

## B. *Exceeding Authority*

In addition to attacking the legality of the CBA, Super Fresh also argues that Arbitrator Brogan exceeded the scope of her authority in crafting her award. Pl.'s Mem. at 23–31. First, Super Fresh argues that the arbitrator's interpretation of the word "successor" in Article 27.1 was so broad that she effectively amended the CBA. Pl.'s Mem. at 23–26. Second, Super Fresh argues that, because Addendum III is "incomplete", the arbitrator exceeded her authority by applying it against Super Fresh. Pl.'s Mem. at 26–31. Finally, Super Fresh argues that Arbitrator Brogan ignored the express language of the CBA when she applied Addendum III to all employees in the bargaining unit.

As discussed above, this Court has a very limited scope of review over a labor arbitration decision issued pursuant to a CBA. Because the parties' bargained for the arbitrator's opinion on the dispute, this Court cannot review the merits of the arbitrator's decision, even if it rests on factual errors or misinterprets the parties' agreement. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (citing *Misco*, 484 U.S. at 36, 108 S.Ct. 364). A reviewing Court may only refuse to enforce an arbitration award when "the arbitrator strays from interpretation and ap-

plication of the agreement and effectively 'dispense[s][her] own brand of industrial justice.'" *Id.* (quoting *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358). As discussed below, because Super Fresh asks this Court to substitute its own interpretation of the CBA for Arbitrator Brogan's interpretation, its arguments must be rejected and the arbitrator's award must be enforced.

### 1. *Article 27.1*

First, Super Fresh attacks Arbitrator Brogan's interpretation of the word "successor" in Article 27.1. As noted above, Article 27.1 directs Super Fresh, as a condition to the "bona fide sale, transfer, franchising, or joint venture agreement" of any grocery store covered under the CBA, to require the new owner to become a party to the agreement. Arb. Award at 2. The provision also states that it applies to the "successors and assigns" of the agreement. *Id.*

The arbitrator found that the parties intended Article 27.1 to be a "strict" successorship clause. *Id.* at 15–22. In her Opinion, Arbitrator Brogan acknowledges that, under NLRB law, a buyer must meet several criteria in order to be considered a "successor" and, even then, a successor does not necessarily violate the Act by refusing to assume the predecessor's CBA. *Id.* at 15 (citing *NLRB v. Burns Int'l Sec. Serv.*, 406 U.S. 272, 294–95, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972)). She found, however, that the parties intended to treat these statutory protections as a "floor" and provide greater protection in the CBA than would ordinarily exist under the statute. *Id.* She interpreted the phrase "successor and assigns" to mean any party that engages in a bona fide sale, transfer, franchising, or joint venture agreement for the Lansdowne store with the intention of either (1) operating a grocery store at the

location or (2) developing the property to be operated as a grocery store by a third party. Arb. Award at 15–17, 20. Accordingly, she found that the Article 27.1 was applicable to the proposed Long View transaction. *Id.* at 16.

Arbitrator Brogan based her interpretation of Article 27.1 on the bargaining history of the parties. First, she points to the testimony of H. Nelson (Bud) Lewis, a Super Fresh negotiator, that Article 27.1 was a "very strict" successorship clause. *Id.* at 18. Second, she relies on testimony by company officials indicating that Super Fresh sought the deletion of Article 27.1 in response to the Union's assertion of its Article 27.1 rights during the dispute over the closing of the Progress Plaza store, described above. *Id.* at 18–19. Finally, she noted the Union's history of asserting its rights under Article 27.1 whenever Super Fresh attempted to transfer a store. *Id.* at 19.

Super Fresh asserts that Arbitrator Brogan's interpretation of "successor" is contrary to the "well known" meaning of the term, as defined in the decisional law. Pl.'s Mem. at 23. Without directly stating it, Super Fresh appears to argue that Long View is not a successor within the meaning of the decisional law because there is no "substantial continuity" between its operations and those of Super Fresh. *Howard Johnson Co., Inc. v. Detroit Local Joint Executive Bd.*, 417 U.S. 249, 263, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 551, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Super Fresh argues that Long View is not a successor because it will not operate the Lansdowne property as a grocery store. According to Super Fresh, Long View, a real estate development company, did not actually buy a "store," rather it merely bought the property as commercial real estate. In Super Fresh's view, the fact that the property is being developed by Long View for the purpose of becoming a Giant supermarket is apparently not relevant to determining whether Long View itself is a successor.

This Court finds that Arbitrator Brogan's interpretation of Article 27.1 draws its essence from the CBA. Initially, the Court notes that, despite Super Fresh's assertions to the contrary, the term "successor", in the labor law context, is far from clearly defined. *Ameristeel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d 264, 268 (3d Cir.2001) (lamenting the "unsettled" nature of the law in this area). Moreover, as Arbitrator Brogan points out in her Opinion, the cases cited by Super Fresh concern disagreements between a union and an employer disputing its status as a successor under the predecessor's CBA. Arb. Award at 16 n. 2. In those cases, the successor was not a party to the negotiations that led to the CBA. Consequently, the Court had to determine whether the purchaser should be considered a successor for purposes of labor law. In contrast, the instant case concerns a dispute between the Union and Super Fresh regarding the interpretation of their current CBA. Under the agreement, the parties bargained for an arbitrator's interpretation of the CBA provisions. Arbitrator Brogan considered and rejected Super Fresh's contentions that Long View is not a successor within the meaning of the CBA. This Court will not substitute Super Fresh's interpretation of Article 27.1 for the arbitrator's interpretation. Accordingly, Arbitrator Brogan's award is enforced as it relates to Article 27.1

### 2. *Addendum III*

█ Super Fresh also argues that the arbitrator effectively altered or amended the CBA by enforcing Addendum III, which Super Fresh characterizes as an

"incomplete" agreement. Pl.'s Mem. at 27–30. As noted above, Addendum III provides that, prior to the sale or transfer of a Super Fresh store covered by the CBA, Super Fresh must offer to sell the store to the Union or the "affected employees" at a fair price. Arb. Award at 4. This fair price mechanism is to be determined by further negotiations between the parties. *Id.* Both parties concede that the fair price mechanism has yet to be established through negotiations.

In her Opinion, the arbitrator found that Addendum III was an enforceable part of the CBA. Moreover, she found that the term "affected employees" included employees at other Super Fresh stores, because those employees would be affected by the closure of the Lansdowne store as employees with more seniority could bump current employees from their jobs. Arb. Award at 16. Finally, she ordered the parties to negotiate the fair price mechanism referenced in the provision. *Id.*

Super Fresh argues that Addendum III is incomplete because the parties have yet to negotiate the fair price mechanism described in the provision. In Super Fresh's view, this failure to negotiate renders Addendum III unenforceable, as it is merely an agreement to negotiate at a later date. It follows, Super Fresh argues, that the parties may not be able to reach an agreement on a fair price mechanism. Accordingly, the provision should not be used to prevent it from selling the Lansdowne store.

In her Opinion, Arbitrator Brogan considered and rejected these same arguments. First, she noted that, in labor agreements, parties often agree to further negotiations on an issue with the idea that the provision is still enforceable against both sides. *Id.* at 24–25. Moreover, she found that Super Fresh's view was contrary to CBA Article 14.6.4, which prohib-

its an arbitrator from deleting, modifying, or adding to the CBA. *Id.* at 24. Having bargained for the arbitrator's interpretation of Addendum III, Super Fresh cannot now seek to substitute its own interpretation of the provision. Accordingly, Arbitrator Brogan's award is enforced as it relates to Addendum III.

## IV. *CONCLUSION*

Because Super Fresh failed to meet its burden in demonstrating either that the CBA was illegal or that the arbitrator exceeded her authority in interpreting the CBA, its motion for summary judgment must be denied. Moreover, the Union's motion for summary judgment must be granted and the arbitration award enforced.

An appropriate Order follows.

### *ORDER*

AND NOW, this 6th day of February, 2003, upon consideration of Defendant United Food and Commercial Workers Local Union 1776's Motion for Summary Judgment (Docket No. 6) and Plaintiff Super Fresh Markets, Inc.'s Motion for Summary Judgment (Docket No. 7), IT IS HEREBY ORDERED as follows:

(1) Defendant's Motion (Docket No. 6) is **GRANTED**;

(2) Plaintiff's Motion (Docket No. 7) is **DENIED**;

(3) Summary Judgment is entered in favor of the Defendant and against the Plaintiff; AND

(4) The Clerk of Court is directed to mark this case as **CLOSED**.