**VICTORY OUTREACH CENTER, et al.**

v.

**Sergeant MELSO, et al.**

No. Civ.A. 00–5185.

United States District Court, E.D. Pennsylvania.

Nov. 29, 2004.

J. Michael Considine, Jr., West Chester, PA, for Victory Outreach Center, C. Stephen White.

Elizabeth S. Mattioni, City Of Philadelphia Law Dept., Philadelphia, PA, for Sergeant Melso, Officer Parker, Officer Cullen, City Of Philadelphia, By and Through the Philadelphia Police Department, Officer Fredericksdorf, Officers John Does A & B, Philadelphia Police Department.

David P. Karamessinis, Devlin, Devine And Casey, Conshohocken, PA, William J. Devlin, Jr., Devlin & Devine, Conshohocken, PA, for St. Joseph's University.

### MEMORANDUM AND ORDER

HUTTON, Senior District Judge.

Presently before the Court are Defendant St. Joseph's University's Motion for Summary Judgment and Supplement thereto (Docket Nos. 99 and 114), Plaintiffs' response thereto (Docket No. 123), Plaintiffs' Motion for Summary Judgment against St. Joseph's University and Supplement thereto (Docket Nos. 118 and 122), and Defendant's response thereto (Docket No. 125).

### I. BACKGROUND

Plaintiffs C. Stephen White ("White") and Victory Outreach Center[1] sued De-

---

[1]. The name "Victory Outreach" was changed to the "Philadelphia Gospel Outreach Center." The entity is an inner-city mission and White is currently its sole employee.

fendants Police Officers and the City of Philadelphia ("City" or "Philadelphia") (collectively "the Municipal Defendants") on October 12, 2000. Plaintiffs amended their Complaint and added St. Joseph's University ("SJU") on November 28, 2001. The Amended Complaint alleges infringement of White's First and Fourth Amendment rights pursuant to 42 U.S.C. § 1983.

This suit revolves around four incidents, two of which occurred during the Greek Picnics on July 24, 1999 and July 9, 2000,[2] and the third and fourth at SJU on March 14 and 15, 2001. The motions presently before the Court relate to the events that took place in March of 2001 at SJU.

### A. March 14, 2001

Plaintiff White is a minister and evangelist who believes that it is his mission to bring his message of the gospel to college students on campuses in the Philadelphia area. White has preached at local college campuses such as the University of Pennsylvania, Temple University, and Drexel University. On March 14, 2001, White preached at SJU, a Catholic school, for the first time. White stood on the "main concourse" along City Line Avenue and addressed the students while his friend, Timothy Gruver ("Gruver"), distributed religious material. On that day, White claims that approximately forty students and other individuals gathered around him. While White was preaching, Father Rick Malloy, a professor at SJU, approached White and began speaking with him about theology and their differing viewpoints. *See* Rick Malloy Dep. at 6, 11, 16–17 (Docket No. 120, Ex. 26); *see also* C. Stephen White Dep., June 27,

---

[2]. For a detailed description of the events that took place at the Greek picnics, see this Court's order dated March 18, 2004.

2003, at 34–36 (Docket No. 120, Ex. 36) [hereinafter "White II"]. This conversation was brief and ended with Father Malloy taking White's business card and departing. White claims that at some point after this, a member of SJU security approached and verbally assaulted him. *See* White Dep., May 19, 2001, at 79 (Docket No. 99, Ex. A) [hereinafter White I]; White II at 53–64. According to White, this individual used profanity and told White that he would beat him if the police did not come. White II at 53–54; *see also* White I at 79.[3] James LeVere, a security officer for SJU, admits that he approached White and told him to move because he was on private property. *See* James LeVere Dep. at 12 (Docket No. 120, Ex. 21). LeVere claims that White moved from the grass to the sidewalk while LeVere stood close by, observed White, and called SJU security headquarters to report that White had moved. *See* LeVere Dep. at 13–14.

At some point after LeVere and White's interaction, the police were called and Officer Dexter Charles Perry ("Officer Perry") and James Keith ("Officer Keith") arrived at SJU. *See* White II at 72; *see also* Dexter Charles Perry Dep. at 7–10 (Docket No. 120, Ex. 31); James Keith Dep. at 4, 9 (Docket No. 120, Ex. 34). According to White, the SJU security guard who threatened him spoke with the police officers when they first arrived on the scene. *See* White II at 69–71. Gruver also describes seeing the police officers speak with an SJU security guard. *See* Gruver Dep. at 50 (Docket No. 120, Ex. 32). Both

police officers deny speaking to any member of SJU security on March 14, 2001. *See* Perry Dep. at 19, Keith Dep. at 15–16. The police officers and White engaged in a brief conversation. After this conversation, and because it was getting late in the day, White agreed to leave. *See* White II at 75.

**B.  *March 15, 2001***

White returned to the main concourse of St. Joseph's University the next day, on March 15, 2001. In his first deposition, White states that about ten students assembled around him. *See* White I at 82–84. In his second deposition, White states that no one gathered around him and that approximately four to five students listened to him from a distance. *See* White II, at 82. White also states that he saw no SJU security guards on March 15. *See* White II at 81–82.

Approximately half an hour later, Philadelphia Police Officer Eric Fredericksdorf approached White and asked White to move to another location by a parking lot. *See* White II, at 83. According to White, Officer Fredreriksdorf stated that there were complaints that White was offending students and asked White to move to a different location or be arrested. *See* White II at 85–88. In response, White stated that he prayed and believed that he needed to continue preaching at the same location. *See* White II, at 88. At that point, White was placed under arrest for obstructing the highway and public passageways in violation of Pa. Cons.Stat. Ann. § 5507.[4]

---

**3.**  According to Gruver, this exchange took place on March 15, 2001. *See* Timothy Gruver Dep. at 56 (Docket No. 120, Ex. 32).

**4.**  The statute defines obstructing highways and other public passages as follows:

(a) Obstructing.—A person who, having no legal privilege to do so, intentionally or

recklessly obstructs any highway, ... sidewalk, ... [or] other public passage ... commits a summary offense, or in case he persists after warning by a law officer, a misdemeanor of the third degree. No person shall be deemed guilty of an offense under this subsection solely because of a gathering of persons to hear him speak or

White's Amended Complaint contains three counts. In Count I, White alleges a federal civil rights claim under the First and Fourth Amendments against the Philadelphia Police Officers and SJU. Counts II and III are against the City of Philadelphia and the Municipal Defendants only. On March 18, 2004, this Court issued an Order denying Plaintiffs' and Municipal Defendants' motions for summary judgment as to Counts I and III. The Court granted Defendant City's motion for summary judgment as to Count II. Presently before the Court are Plaintiffs' and Defendant SJU's motions for summary judgment as to Count I.[5]

## II. *LEGAL STANDARD*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file showing a genuine issue of material fact for trial. *See id.* at 324, 106

S.Ct. 2548. The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the evidence is such that a reasonable jury could return a verdict for the non-moving party, then there is a genuine issue of material fact. *See id.*

When deciding a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *See id.* Nonetheless, a party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. *See Trap Rock Indus., Inc. v. Local 825,* 982 F.2d 884, 890 (3d Cir.1992).

## III. *DISCUSSION*

In order to maintain a civil rights cause of action under 42 U.S.C. § 1983, a plaintiff must prove that (1) a person acting under color of state law, (2) deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States.[6] *See West v. Atkins,* 487 U.S. 42,

otherwise communicate, or solely because of being a member of such gathering.
18 Pa. Cons.Stat. Ann. § 5507(a).

5. SJU alludes to Counts V and X in its motion for summary judgment, but as the Amended Complaint contains only three counts, and only the first of these three counts mentions SJU, the Court will restrict its ruling to Count I of the Amended Complaint.

6. 42 U.S.C. § 1983 provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Section 1983 is not, by its own terms, a source of substantive rights. Instead, it provides a remedy for deprivations of rights that are established elsewhere in the Constitution or the federal statutes. *See Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir.1996).

■ The first requirement in establishing a § 1983 violation is to show that the defendant was acting under color of state law. To establish that a private actor is acting under color of state law, Plaintiffs must show that there is such a " 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " *Adams v. Teamsters Local 115,* 2003 WL 22005708, *5 (E.D.Pa. Aug.6, 2003) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)). Plaintiff alleges this nexus exists because SJU and its security guards conspired with the Philadelphia police officers to deprive White of his First and Fourth Amendment rights. Before addressing the existence of the conspiracy, the Court must determine if Plaintiff has met the standard for corporate liability against SJU.

■ The Supreme Court held that a municipality cannot be held liable under a theory of respondeat superior. *See Monell v. New York City Dept. of Sec. Serv.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Although neither the Supreme Court nor the Third Circuit has addressed the issue of whether a private corporation can be held liable for the acts of its employees on a respondeat superior theory, this Court and several others have

addressed the issue. In *Miller v. City of Philadelphia,* 1996 WL 683827 (E.D.Pa. 1996), this Court stated that the rule from *Monell* "equally applies to private corporations." *Id.* at *3. *See also Miller v. Hoffman,* 1998 WL 404034, *5 (E.D.Pa.1998) (finding that a private corporation can not be held vicariously liable for the acts of its staff under § 1983). Therefore, Plaintiffs cannot succeed on a claim against SJU predicated on respondeat superior liability.

■ However, the Supreme Court also stated an exception to the rule prohibiting respondeat superior liability. In *Monell,* the Supreme Court stated that "when execution of a government's policy or custom ... inflicts the injury ... the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. This Court has also extended this exception to private corporations. *See Hoffman,* 1998 WL 404034 at *5. In order for a private corporation to be liable, it must have known of and "acquiesced in the deprivation of plaintiffs' rights." *Id.* To meet this burden, Plaintiffs must show that the corporation "established and maintained a policy, practice or custom which directly caused plaintiffs' constitutional harm" with "deliberate indifference to the consequences." *Id.*

■ Here, Plaintiffs have presented evidence of SJU's policies regarding speech on campus and availability of campus facilities for use by outside speakers. Plaintiffs have also presented evidence from the SJU Department of Safety and Security Director's Log that a security officer was dispatched to the scene and instructed to bring the literature back to the office. Plaintiffs allege this event occurred before SJU ever called the police and before SJU determined exactly where White was located. Viewed in the light most favorable to

injured in an action at law, suit in equity, or other proper proceeding for redress.

them, Plaintiffs have presented an issue as to whether SJU had a custom of allowing its security guards to violate White's First and Fourth Amendment rights.

■ Plaintiffs have also met their burden of demonstrating a genuine issue of material fact as to whether or not SJU and its security guards conspired with the Philadelphia police officers. To succeed on this claim at the summary judgment stage, Plaintiffs must satisfy the elements of a civil conspiracy. To demonstrate a civil conspiracy under § 1983, a plaintiff must establish (1) the existence of a conspiracy and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A civil conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.'" *Adams,* 2003 WL 22005708 at *6 (quoting *Hampton v. Hanrahan,* 600 F.2d 600, 620–21 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)). Such an agreement can be proven through either direct or circumstantial evidence. *See id.* . The question of whether an agreement exists is for the jury to decide "so long as there is a possibility that the jury can infer from the circumstances that [the alleged conspirators] had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." *Hampton,* 600 F.2d at 621 (citing *Adickes,* 398 U.S. at 158–59, 90 S.Ct. 1598). Thus, when a plaintiff alleges a conspiracy to violate civil rights, "the existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should

decide." *Adickes,* 398 U.S. at 176, 90 S.Ct. 1598.

Viewed in a light most favorable to Plaintiffs, the Court finds that there is sufficient evidence from which a jury could determine that a conspiracy existed. Plaintiffs argue that the security guards spoke with the police officers who arrived at the scene on the first day for a few moments before they spoke with White. Plaintiffs have also provided circumstantial evidence in the form of the security log and the police report from the second day that establish a genuine issue as to the existence of a conspiracy. Because Plaintiffs have raised a genuine issue of material fact as to whether a conspiracy existed, the Court must deny Defendant SJU's motion for summary judgment.

Since this is a cross motion for summary judgment, the Court will also view the evidence in the light most favorable to SJU in ruling on Plaintiffs' motion for summary judgment. SJU provides evidence that the police officers never spoke with any SJU security guards. Viewing this evidence in the light most favorable to SJU, there is an issue as to whether the conspiracy existed and the Court must also deny Plaintiffs' motion for summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court denies Defendant SJU's Motion for Summary Judgment as to Count I and denies Plaintiffs' Cross–Motion for Summary Judgment as to Count I.

An appropriate Order follows.

## ORDER

AND NOW, this 29th day of November, 2004, upon consideration of Defendant St. Joseph's University's Motion for Summary Judgment and Supplement thereto (Dock-

et Nos. 99 and 114), Plaintiffs' response thereto (Docket No. 123), Plaintiffs' Motion for Summary Judgment against St. Joseph's University and Supplement thereto (Docket Nos. 118 and 122), and Defendant's response thereto (Docket No. 125), IT IS HEREBY ORDERED that:

(1) Summary judgment is **DENIED** to Defendant SJU as to Count I and

(2) Summary judgment is **DENIED** to Plaintiff as to Count I.