NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1306
_____

CARMELO F. VATICANO,

Appellant

v.

TOWNSHIP OF EDISON;
MAYOR JUN H. CHOI;
BRIAN COLLIER;
THOMAS BRYAN

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cv-01751)
District Judge:  Honorable Susan D. Wigenton

_____

Submitted Under Third Circuit LAR 34.1(a)
February 11, 2013

Before:  HARDIMAN, and ALDISERT, *Circuit Judges*
and STARK[*], *District Judge*

(Filed: February 20, 2013)
_____

OPINION OF THE COURT
_____

_____

[*]  The Honorable Leonard P. Stark, District Judge for the United States District Court
for the District of Delaware, sitting by designation.

HARDIMAN, *Circuit Judge*.

Carmelo Vaticano appeals the District Court's summary judgment dismissing his civil rights claims against Appellees Township of Edison, Jun Choi, and other municipal officials. We will affirm.

I

In 2006, when Vaticano was a Deputy Police Chief, Jun Choi became the Mayor of Edison Township, New Jersey. Vaticano had supported Choi's opponent in the primary election of 2005. The gravamen of Vaticano's case is that from 2005 to 2009, Mayor Choi devised and implemented a scheme to elevate an unqualified supporter to Chief of Police while denying Vaticano his rightful promotion to Chief. Vaticano also alleges that Choi and his supporters punished him for his lack of political support for the Mayor by assigning Vaticano to "demeaning" tasks that were below his rank and experience and by paying him less than comparable officers.

In April 2009, Vaticano filed a complaint in the United States District Court for the District of New Jersey pursuant to 42 U.S.C. § 1983. On November 5, 2010, the District Court granted the Appellees' motion for partial summary judgment, dismissing Vaticano's § 1983 claims. Vaticano timely appealed.

## II[1]

Vaticano alleges, *inter alia*, that Appellees' decisions to deny him several promotions, assign him "demeaning" work, and limit his pay were in retaliation for his support of Choi's primary opponent and a certification Vaticano provided in March 2008, in the case of *Wheeler v. Edison*, Civ. No. 06-cv-5207. Our review of a district court's summary judgment is plenary. *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We agree with the District Court that Vaticano has failed to marshal facts sufficient for a reasonable jury to find that he was discriminated against based on his political beliefs or punished for exercising his First Amendment rights.

### A

Vaticano points to three events that he claims are direct evidence of Choi's political animus against him: a 2005 pre-election exchange between Choi and Vaticano about Choi's qualifications for mayor; a 2005 post-election meeting between Mayor-elect Choi and Vaticano; and a 2007 conversation between the two after Vaticano sent officers to break up lawful campaigning outside a community event.

Vaticano alleges that prior to the election, he "confronted Choi questioning his

---

[1] The District Court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

ability to be Mayor . . . resulting in a testy exchange." According to his own deposition, however, Vaticano simply asked Choi why he was running for mayor despite his lack of municipal experience and Choi answered: "[B]ecause he wanted to do it." Vaticano conceded that the exchange was "not hostile." Vaticano next alleges: "Choi himself [said] that he would have difficulty backing officers that did not support him during the mayoral campaign." Vaticano repeatedly cites page 108 of the Appendix to support this claim, but he mischaracterizes the record.[2] Even in Vaticano's deposition testimony, at

---

[2] Page 108 of the Appendix contains four pages of Vaticano's deposition describing a conversation between the two about a rumor that Vaticano had been saying disparaging things about Choi. The transcript reads:

> [Choi] kept saying, "You know what you said?" After going back and forth many times, [Choi] looked at me, he said, "You really don't know what I'm talking about?" I says, "Jun, I haven't got a clue what you're talking about."
>
> And that's when I looked at [Choi], I said, "Look, you're surrounding yourself with officers that I feel that are not giving you the appropriate information." I said, "What you need to do is sit back a little bit and look at the entire police department."
>
> I says you—you know, "Back your officers." I says, "These guys will do cartwheels for you. If they know that you're in their corner, you're going to support them."
>
> At that point [Choi] just said, just had a hard time with it saying that they didn't support him, they didn't support him as mayor.
>
> Support you? Who were you back then? You were this John Q Citizen that came out of nowhere that won against The Machine and guess what, you won. Now you're not that person. You're the boss now.
>
> I says, "I'm telling you, these guys will follow you anywhere. Just be in their

no point did the Mayor's words indicate what Vaticano asks us read into them, *i.e.*, that Choi would have difficulty promoting police officers who did not support him politically during the 2005 primary. Finally, in 2007, Vaticano and Choi clashed after Vaticano sent officers to break up lawful campaigning outside a community event. At that time, Choi allegedly told Vaticano, "I know what your political views are and I'm tired of you politicizing the police department," and threatened to "write [him] up" if he did not recall the officers.

Contrary to Vaticano's framing of these three encounters, they do not provide strong direct evidence that Choi harbored political animosity toward Vaticano. At most, these exchanges indicate: (1) that Choi was aware Vaticano had supported his rival during the 2005 primary and (2) that Choi believed Vaticano's decision to break up lawful campaigning may have been influenced by Vaticano's political views. Though this is weak support for Vaticano's contention that Choi disfavored him because of his political views, we are mindful that when reviewing a district court's summary judgment, we "should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor." *Galli*, 490 F.3d at 270 (citing *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). Thus, for purposes of our analysis, we assume that Choi harbored animosity toward Vaticano because of his political beliefs.

corner and support them." Just had a difficult time with that.

B

Even accepting that the source of Choi's alleged hostility toward Vaticano was political, Vaticano must still marshal facts to demonstrate causation, *i.e.*, that political animus "was a substantial or motivating factor in the government's employment decision[s]." *Galli*, 490 F.3d at 271. Vaticano alleges that Choi's political bias "directly resulted" in several different forms of "adverse action," which we will address in turn.

First, Vaticano claims that in late 2007, he was passed over for the position of Acting Police Chief for political reasons when Deputy Chief Ron Gerba was named to the post. He claims that the political nature of the decision was "glaring" because Gerba had been on medical leave for some time and that "[b]y Ordinance, practice and merit, [Vaticano] should have been named acting Chief." As the District Court correctly pointed out, however, no ordinance mandated that Vaticano, rather than his fellow Deputy Chief Gerba, be appointed Acting Police Chief. Furthermore, at the time of Gerba's assignment, he had worked at the Police Department for nine more years than Vaticano.

Second, Vaticano argues that the rise of Thomas Bryan from Lieutenant to Police Chief in less than a year was motivated by Choi's political favoritism for Bryan and bias against Vaticano. In early 2008, the Township Council, with Choi's support, had made changes to the police department's governing ordinance. Prior to amendment, the ordinance required "[a]ny individual, officer or candidate to be promoted to the position of chief of police or deputy chief [to] have served in the position of captain of the police

6

department for a term of no less than two years." Edison Twp. Ord. § 2.96.460 (2006). The amendment permitted the promotion of a lieutenant to deputy chief or chief, eliminating the previous requirement that a candidate for those positions first serve as a captain for two years. Edison Twp. Ord. § 2.96.460 (2008).

On April 1, 2008, Choi, with the support of the Township Council, appointed Brian Collier to serve in the newly created position of Police Director, the civilian head of the Edison Police Department. Collier, who had a background in federal law enforcement, was hired after a national search and there is no evidence he even knew Choi, much less that he supported him politically. That same month, Thomas Bryan, Commander of the Department's Internal Affairs Unit and a twenty-four-year veteran of the Department, was promoted to Deputy Chief. After then-acting Police Chief Ron Gerba retired, Collier gave Bryan, instead of the more tenured Deputy Chief Vaticano, operational control over the Department. On January 13, 2009, Collier promoted Bryan to Police Chief, while Vaticano remained as Deputy Chief.

Vaticano argues that Choi's plan to amend the ordinance, hire Collier, and promote Bryan was intended "[t]o bypass [Vaticano], the obvious choice for [Police Chief]." According to Vaticano, Choi accomplished this by manipulating the legislative process to place Bryan, whom Vaticano asserts was a political supporter of Choi,[3] into the position.

---

[3] Contrary to a finding of the District Court, the parties continue to dispute whether Bryan supported Choi during the 2005 campaign. During his deposition, Bryan asserted that he supported Choi's rival, George Spadoro, claiming that he attended Spadoro

7

Even if we assume that Choi himself favored Bryan and disfavored Vaticano, however, the record is devoid of evidence to show that politics were a "substantial or motivating factor" in any decision to give Bryan operational authority over the Department or to promote him to Police Chief.

Once Choi relinquished his position as Director of Public Safety and turned control of the Department over to the Police Director, Collier had authority to choose which Deputy Chief would assume operational authority when Gerba vacated the office of Police Chief. Collier indicated numerous performance-based reasons why he chose Bryan over Vaticano, including: Vaticano had been part of a leadership regime that had allowed the Edison Police Department to consistently underperform;[4] the Department's offices

---

fundraisers and "may have had signs up for him at one point" at Bryan's local business. Former Police Chief George Mieczkowski testified that Bryan was a Choi supporter, although his belief was based solely on a "newspaper picture." Because courts reviewing a motion for summary judgment are required to view the facts in the light most favorable to the non-movant, the District Court erred when it found that Bryan was not a Choi supporter. However, a fact is material only if it will affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The District Court's error does not affect the outcome of the case because the record does not indicate that Bryan's political affiliation was a "substantial or motivating factor" behind Collier's decision to promote him to Deputy Chief in charge of operations and subsequently to Police Chief. *See Galli*, 490 F.3d at 271.

[4] Collier testified:

I believed that [Vaticano] was in a commanding position where he could have made a difference and no difference had been made and I'm trying to get things done and I probably made my decision . . . based on hey, I've got to go with somebody new, somebody different who can help me move this police department forward because I hadn't seen anything to reflect the fact that the

8

were in physical disarray while Vaticano's office was "very luxurious[]," a sign that Vaticano had failed "to take care of the troops"; and Bryan, a Lieutenant prior to his promotion, was a better choice to "help [Collier] move the department forward" because, unlike Vaticano, he had not been part of the prior regime's history of neglect.[5] Furthermore, Collier testified that Choi did not tell him to appoint Bryan Deputy Chief in charge of operations. Vaticano offers no evidence to rebut this assertion.

The comparative performance of the two individuals after Bryan's first few months as Deputy Chief presented Collier with other non-political reasons to promote Bryan to Police Chief instead of Vaticano. Collier's August 2008 evaluation of Vaticano indicated several concrete examples of deficient work and noted he was "underperforming," while Bryan's evaluation indicated that he had "done [his] best and

---

> police department was moving forward under the current leadership that was in place upon my arrival.

Supp. App. 4.

> [5] Collier averred that he gave operational authority to Bryan because:

> Based upon all of my research which included a number of people with knowledge of Edison and its police department as well as other police departments and other law enforcement agencies and based upon some of my anecdotal observations . . . as well as what I considered based upon my research an integrity deficit within the department it was my opinion that the staff and leaders who had been there were not going to move the police department forward . . . and based upon the fact that I needed to have one person in charge and I needed to make that decision I chose then Deputy Chief Thomas Bryan . . . .

App. 581.

accomplished most of what [he had] set out to do." There is no evidence that Choi told Collier to punish Vaticano or that Choi otherwise influenced Collier's decision.

Vaticano cites nothing in the record to contradict any of Collier's assertions about the quality of either Vaticano's or Bryan's work. In fact, he admits that by the end of July 2008, he and Collier "just did not have a working relationship." Rather, in support of his contention that politics were a "substantial or motivating factor" behind Collier's preference for Bryan, Vaticano cites an outside consultant's conclusion that he was more qualified than Bryan to be the Deputy Chief in charge of operations and later Police Chief. Yet, the consultant's report fails to call into question or even address the legitimacy of Collier's qualitative concerns with Vaticano's job performance.[6] What remains is Vaticano's conclusory assertion that a "jury would be able to conclude that Mr. Collier, as an appointee of the Mayor, was beholden to" Choi, who favored Bryan and disliked Vaticano. This is insufficient, however, because Vaticano "may not rest upon mere allegations, general denials or vague statements" in order to survive summary judgment. *Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO*,

---

[6] The consultant's report indicates that he concluded that Vaticano was more qualified based solely on quantitative metrics such as: years spent as a police officer, years spent in an executive or supervisory role, total letters of commendation, and duration of residency in Edison. These are all factors that would, all else being equal, favor a more tenured police officer, such as Vaticano. But Vaticano concedes that the report neither addressed Collier's concerns with the quality of Vaticano's work and his leadership capabilities nor considered Bryan's demonstrated ability to perform despite his relative lack of tenure.

10

982 F.2d 884, 890 (3d Cir. 1992) (internal quotation marks, alterations, and citation omitted). Simply stated, Vaticano has failed to cite competent evidence to support his contention that Bryan's promotions were substantially motivated by politics.

Third, Vaticano argues that Appellees punished him for his political views by assigning him to "demeaning" tasks that were below his rank and experience. Specifically, Vaticano complains he was assigned to research the Newark Police Department's COMPSTAT program and objects to having been assigned to the Department's midnight shift, the Township's car impound lot, and the Communications Bureau. Vaticano received no reduction in rank or pay while on these assignments. Furthermore, the record indicates that there were legitimate, nondiscriminatory reasons for Vaticano's placement. In fact, Vaticano embraced several of the assignments at the time.

Supervisors of the midnight shift had permitted inappropriate behavior and Collier believed that a command presence was necessary to ensure better performance. Vaticano conceded that it would be appropriate for a member of the command staff to work the midnight shift, although "not a Deputy Chief of Police." The Communications Bureau also required the presence of a high-ranking officer because it had committed a number of errors, including sending radio cars to incorrect addresses. When Bryan had first discussed the assignment with Vaticano, he responded that it was "not a problem" and that he would "crack the whip down there." Vaticano only protested when he realized it

11

would necessitate moving his office closer to the Communications Bureau, which was located in the basement. Vaticano was sent to gather information about the Newark Police Department's COMPSTAT program because Newark's point person was, like Vaticano, a Deputy Chief. He indicated the contacts he made in Newark were "very precious" and that the assignment "was a positive experience." Finally, the Township's impound lot was another area that had been neglected for some time and required significant improvements. The record is devoid of evidence to suggest that politics was a "substantial or motivating factor" in any of these assignments.

Finally, Vaticano contends that Appellants retaliated against him by denying him pay increases and other benefits that caused him to receive less pay than officers of comparable rank. The difference in salary between Vaticano and Bryan was not specifically addressed by the District Court. Our review of the record indicates that when Bryan became Deputy Chief, he was paid $160,000 while Vaticano's annual salary, which had been set in 2005 upon his appointment as Deputy Chief, remained $148,000. In September 2008, the Township's business administrator sent Vaticano a letter inviting him to discuss his contract because it had "not been updated recently." Upon advice of counsel, Vaticano declined the offer. Because Vaticano abstained from a negotiation that could have raised his salary to a level comparable with Bryan's salary, we cannot hold that the discrepancy is indicative of political discrimination.

In political retaliation cases where we have found sufficient evidence to withstand

a motion for summary judgment, there has been a much clearer causal link between political affiliation and the complained of action than is present in this case. For example, in *Stephens v. Kerrigan*, 122 F.3d 171 (3d Cir. 1997), we found summary judgment improper where a lieutenant who had supported the mayor's political opponent was listed at the top of a police department promotions list, yet was denied promotion based on the mayor's "inconsisten[t]" and arguably "pretextual" justifications. *Id.* at 182. Essential to our determination was the fact that "[the mayor] has never claimed that the individuals at the top of any of the lists are unqualified for the positions, nor is there any evidence in the record that would indicate that the officers who were top ranked on the lists were undeserving." *Id.* at 183; *see also Galli*, 490 F.3d at 269 (after plaintiff's termination, official told her the office was "letting Republicans go"). That stands in stark contrast to this case, which includes a multitude of unrefuted, performance-based justifications Appellees have offered for why Bryan was chosen over Vaticano.

In sum, because Vaticano has failed to demonstrate that his political support for Choi's rival was a "substantial or motivating factor" behind the alleged retaliatory actions, summary judgment was proper.

C

Vaticano also alleges that he was retaliated against for providing a certification in support of a separate court action against Choi and the Township. Similar to a claim based on political discrimination, to establish a First Amendment retaliation claim, a

13

plaintiff must establish the necessary causal link by proving "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). In the absence of these elements, we have held that evidence of causation may be "gleaned from the record as a whole." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). As the District Court rightly noted, however, Vaticano failed even to provide evidence indicating that Appellees were aware that he filed a certification in the *Wheeler* action in the first place. Given this failure, he cannot show the necessary causal link between his certification and the allegedly retaliatory conduct. Thus, summary judgment was proper.

III

For the foregoing reasons, we will affirm the District Court's summary judgment.

14